# Richmond.

## STEPHEN PUTNEY SHOE COMPANY, INC., v. ORMSBY'S ADMINISTRATOR.

### January 28, 1921.

1. STREETS AND HIGHWAYS.—*Automobiles—Negligence of Driver of Automobile—Speed Limit.*—Where the evidence in an action against the owner of an automobile for the death of one struck by the automobile shows that the driver of the automobile, a servant of the owner, was materially exceeding the lawful speed limit at the time of the accident, the negligence of defendant is established.

2. AUTOMOBILES.—*Injury to Pedestrian—Contributory Negligence—Case at Bar.*—In the instant case, plaintiff's decedent, a pedestrian, was guilty of contributory or concurring negligence under the circumstances in evidence in stepping from the sidewalk to the roadway, at the intersection of two streets, where if he had looked before stepping from the curb, he would have been bound to see within a few feet of him a rapidly approaching automobile just at the turn.

3. CROSSINGS.—*Streets—Look and Listen—Case at Bar.*—While the look and listen rule is not as strictly applied to street crossings as it is to railroad crossings, a reasonable lookout is required; and nothing but an utter lack of prudence could have accounted for plaintiff's decedent's failure to look in stepping from the curb to the street. In other words, if the decedent did look, he was bound to have seen the automobile and was negligent as a matter of law in stepping in front of it; and, if he did not look, he was none the less negligent.

4. AUTOMOBILES.—*Injury to Pedestrian—Contributory Negligence—Last Clear Chance—Case at Bar.*—In the instant case, an action for the death of a pedestrian struck by an automobile when attempting to cross a street, where it appeared from the evidence that the automobile could not have been stopped at the rate at which it was going in time to have saved decedent after he stepped from the sidewalk into the roadway, the driver of the automobile had no last clear chance to avoid

38

the accident and that doctrine does not apply, and the case is one of contributory negligence. If, on the other hand, the automobile had been going slow enough to stop or reduce its speed sufficiently to save decedent, then it is self-evidence that decedent likewise would have had sufficient time to get out of the way, and he would have had the last clear chance, or at least an equal chance to avoid the accident. In any view of the case it must be held to have been one of either contributory or concurring negligence.

Error to a judgment of the Law and Equity Court of the city of Richmond in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*S. A. Anderson* and *A. G. Collins,* for the plaintiff in error.

*Geo. E. Haw,* for the defendant in error.

KELLY, P., delivered the opinion of the court.

S. M. Ormsby was struck and seriously injured by a Ford truck owned by Stephen Putney Shoe Company, Incorporated, and driven by Thomas Cooper, a colored man in the employment of that company. Ormsby died shortly afterwards. An action for damages followed, in which his administrator recovered against the company a verdict and judgment for five thousand dollars.

The accident occurred in the city of Richmond, on the east side of Ninth street, a few feet north of the point where that street is intersected by the north line of the driveway leading east from the Capitol Square. The exit from the driveway, marked by two large posts on each side giving the appearance of an open gateway, is immediately opposite the eastern terminus of Grace street, and, except

for the fact that the driveway is not so wide as Grace street, the physical situation is the same as if Grace street extended beyond Ninth into the Capitol Square. On each side of the driveway is a sidewalk leading to the sidewalk on the east side of Ninth street. The combined width of the sidewalks and driveway is practically equal to the width of Grace street from curb to curb. The situation will be better understood by reference to the accompanying sketch showing the intersection of the streets and the driveway in question.

Ormsby was coming out of the Capitol Square using the walk on the north side of the driveway and had reached the sidewalk on the east side of Ninth street about the time Cooper, driving the truck eastward on Grace, was approaching the intersection of Grace and Ninth. Ormsby was evidently intending to cross Ninth and go west on the north side of Grace. Cooper's route was across and up Ninth on the east side. Ormsby walked out of the Capitol Square, proceeded almost straight across the walk on Ninth, stepped from the curb into the street, and was struck by the right front fender of the truck. Cooper had made the crossing and turn in the manner required by the traffic ordinance, proceeding as far as he could straight across Ninth, making a full turn, and proceeding up Ninth as close to the right hand curb as practicable. There were no other vehicles or pedestrians on the street or sidewalks between Ormsby and Cooper, and each was in clear and easy view of the other from the time Ormsby came out of the Square on the sidewalk. The substance of Cooper's testimony is that he was not exceeding the lawful rate of speed either as he came down Grace or as he turned and went up Ninth; that Ormsby stepped from the curb only about three or four feet ahead of the truck; that he tried to save him by swerving quickly to the left; and that Ormsby "came against the fender" and was knocked down in that

PLAN

SHOWING THE INTERSECTION OF

9TH & GRACE STS.

RICHMOND, VA.

Jan. 3. 1921.

Scale 1"=15'

way. Upon these facts, if they stood alone, there would clearly be no liability upon the defendant.

[1] There was one other eye witness, however—and only one—and upon his testimony the fate of the case depends. This witness was N. C. Redford. He was coming up the east side of Ninth in a buggy, intending to turn into Grace, and just before he got to the southern gate of the Capitol driveway, seeing the truck coming down Grace, he stopped his horse to let the truck pass. He estimated Cooper's speed at about twent-five miles an hour, but admitted that he had never driven an automobile and didn't know that he would be considered a judge on that question, although he thought he could say about how fast it was going. Without setting out his testimony on this point in full—for he had a good deal to say about the speed of the truck—it may be very fairly said to have been sufficient to show that the driver was materially exceeding the lawful limit, which was fifteen miles an hour on straight runs, and seven and a half miles an hour at crossings and in making turns. The negligence of the defendant must, therefore, be considered as established.

Redford further testified, in part, as follows: "Just as he (Cooper) turned the bend, I saw this gentleman (Ormsby) and I had seen him a second or so previous, coming through the walking gate above the driving gate. He got to the curbing about the time the truck got to the turn, and he stepped off the sidewalk. I did not see it hit him, but I saw him fall and roll. The truck passed by him. * * * I don't know how far he had gotten off the sidewalk when he was struck, but when he fell he was three or four feet from the curbing; he was there when I picked him up. * * * The best of my recollection is that he came straight through the walking gate, and walked straight over the sidewalk. It was so quick that I don't think he had time to do any walking diagonally from the time I saw him

come out of the gate until the truck hit him in the street. It happened quick as that (snapping fingers) to the best of my recollection. * * * I don't think he saw the truck at all. * * * It happened so quick I would not be clear on distances. * * I couldn't tell which part of the truck hit him; I saw him step out and I saw him fall. * * * The truck didn't come between me and Mr. Ormsby (that is so as to obstruct his view of the man), but I was interested in going. up Grace street, and as the truck passed I turned my eye up Grace street, and as I looked around again I saw this man fall on the ground. * * * I don't know how he rolled. He fell on his face and rolled over; when I picked him up he was lying on his side. * * * He was three or four feet from the sidewalk, one-third of the distance from the curb to the car track. * * * I saw him put one foot off the sidewalk; that is all I saw him step; whether he stepped another step or not I don't know, and that second or the next second I saw the machine rush by him and he fell down."

[2, 3] An ordinance of the city of Richmond provides: "Pedestrians before stepping from the sidewalks to the roadbeds, should look to see what is approaching, and shall not needlessly interfere with the passage of vehicles." It may be conceded, and is doubtless true, that this ordinance does not impose upon pedestrians any obligation, in so far as their personal safety is concerned, that would not rest upon them ·independent of its existence, and did not require the plaintiff's decedent to do more than an ordinary prudent man would have done, which as stated in the brief of counsel for the plaintiff, "would have been to look up and down Ninth street to see if vehicles were approaching either north or south."

. Under the circumstances, as above detailed, which seems to us to be as favorably stated as possible from the standpoint of the plaintiff, we are unable to see how it could

reasonably be said that Ormsby was not guilty of contributory or concurring negligence in leaving the sidewalk and going on the street. If he looked before stepping from the curb, he was bound to see within a few feet of him a rapidly approaching automobile just at the turn. The street was absolutely clear, and there was nothing whatever to distract his attention or obstruct his view. The argument that he might have thought the truck would go into the Capitol Square does not appeal to us. It was a business truck, far more likely to be moving on the streets than into the Capitol Square; it was plainly making the turn, and there was everything in its appearance to indicate that it would go up Ninth street. Redford, who was in no better position than Ormsby to watch its movement, had no other idea than that it would go up Ninth street. If, on the other hand, Ormsby did not look, he was equally negligent. While the look and listen rule is not as strictly applied to street crossings as it is to railroad crossings, a reasonable lookout is required; and nothing but an utter lack of prudence could have accounted for Ormsby's failure to look at all. In other words, if he did look, he was bound to see the truck and was negligent as a matter of law in stepping in front of it; and if he did not look, his negligence as a matter of law is none the less apparent. *Va. Ry. & P. Co.* v. *Boltz,* 122 Va. 649, 653, 95 S. E. 467.

It is argued that Ormsby must have been well out in the street when the truck struck him, because his body was found three or four feet from the sidewalk, and, having been struck by the side of the fender, would naturally have been thrown back some distance in that direction. We are not impressed with this argument. It overlooks the fact that Cooper, who is not in any way contradicted in this respect, states that when he discovered Ormsby's danger he swerved quickly to the left, and that Ormsby, proceeding forward, walked against the fender and was knocked

down. His testimony on cross-examination, which is merely an amplification of his direct testimony upon this point, was as follows:

"Q. And you swerved your car away from him?

"A. As soon as I saw him I cut the car around like that (indicating).

"Q. When you hit him he was knocked back to the sidewalk?

"A. No, sir."

"Q. Where did the fender knock him?

"A. The fender did not knock him. He came against the fender and came along like that a little distance."

This is entirely in harmony with the testimony of Redford, who simply says that he saw him fall and roll over. There is nothing, therefore, in the position in which the body was found upon which we can reasonably hold that Ormsby had started from the sidewalk at a time when a reasonably prudent man might have thought he had time to cross.

[4] The doctrine of the last clear chance does not apply. Redford says that the car could not have stopped at the rate at which it was going in time to save Ormsby. If this be true, then of course the truck driver had no last clear chance to avoid the accident, and the case is one of contributory negligence. If, on the other hand, it be conceded that the truck was going slow enough to stop or to reduce its speed sufficiently to save Ormsby, then it is self-evident that Ormsby likewise would have had sufficient time to get out of the way either by simply stopping or stepping back, and he himself would have had the last clear chance, or at least an equal chance to avoid the accident. See 7 Am. & Eng. Ency. L. (2d ed.), p. 387. In any view of the case it must be held to have been one of either contributory or concurring negligence.

The foregoing conclusion renders it unnecessary to pass upon the questions arising as to certain of the instructions

to the jury, and upon the further very interesting and warmly contested question as to whether the injuries received can be regarded as the proximate cause of decedent's death, the physician attending him having testified that he had probably sustained a fracture of the skull from the accident, and would probably have eventually died from that cause, but had a chance to recover, and in fact died from pneumonia which frequently accompanied but was not caused by injuries of that character.

For the reasons stated, the judgment complained of must be reversed, and this court being of opinion that all the facts were fully developed at the trial and now appear in the record, and that upon such facts the plaintiff is not entitled to recover, will, in pursuance of the practice provided for in section 6365 of the Code, enter a final judgment here for the defendant.

*Reversed.*