# Richmond

## ROBERT D. CLAYTON v. JAMES A. TAYLOR.

March 10, 1952.

Record No. 3881.

Present, Hudgins, C. J., and Eggleston, Spratley, Miller, Smith and Whittle, JJ.

The opinion states the case.

*I. W. Jacobs* and *Murray, Ford, West & Wilkinson*, for the plaintiff in error.

*Taylor, Hall & Martin* and *Robert Lewis Young*, for the defendant in error.

MILLER, J., delivered the opinion of the court.

A verdict and judgment were recovered by James A. Taylor against Robert D. Clayton for damages resulting from personal injuries sustained by Taylor when an automobile which he was driving was in collision with a car driven by Clayton.

The accident happened about 6:45 p. m. on the 3rd day of March, 1950, at the intersection of Roanoke avenue and 16th street in the city of Newport News. Roanoke avenue extends in a northerly and southerly direction and is intersected at right angles by 16th street which is 44 feet wide. North of 16th street, the width of Roanoke avenue is also 44 feet, but south of 16th street, it has a width of 64 feet. However, from 16th street southwardly Roanoke avenue is divided in the center by a grass plot or island 20 feet wide, thus leaving two vehicular traffic lanes each 22 feet wide.

The northern end of the 20 foot wide grass plot, or island, sits back from and begins three feet south of the southern curb line of 16th street extended across Roanoke avenue. The fact that Roanoke avenue is 20 feet wider south of 16th street than it is north of that street causes its eastern and western curb lines south of 16th street to sit back ten feet more than do those curb lines north of 16th street. Otherwise, briefly stated, Roanoke avenue is 20 feet wider south of 16th street than it is north thereof, and thus its curb lines, if extended straight across 16th street, would not meet.

A block from Roanoke avenue in a westerly direction is Orcutt avenue, and the distance between these two parellel streets is 600 feet.

Clayton contends that the testimony of Taylor himself is irreconcilable with the physical facts, unbelievable and incredible, and thus precludes any recovery by him. He also asserts that Taylor's testimony is in conflict with that of his own chief witness, William R. Jennings, and of such character as to convict him (Taylor) of contributory negligence as a matter of law, and that there is insufficient proof of primary negligence on his (Clayton's) part to support the verdict and judgment.

Conflicts in the testimony and all just inferences that may be drawn from the evidence have been resolved by the jury in Taylor's favor, and we must view the evidence in the light most favorable to him. The judgment may not be reversed unless it is clearly against the evidence or is without credible evidence to support it.

The maximum speed at which motor vehicles were permitted to travel upon either Roanoke avenue or 16th street at the location in question is conceded to have been 25 miles per hour.

At the time of the accident it was sufficiently dark to need lights upon motor vehicles, and the headlights of both cars were burning. Many vehicles traverse this crossing and a traffic light to caution drivers was located over the center of the intersection. Its amber light was usually kept operating—"flashing"—to warn and caution traffic, and it was so operating at the time of the mishap. As Taylor drove his car southwardly along Roanoke avenue and while he was crossing 16th street, it was struck on the right side by Clayton's automobile which was being driven eastwardly along 16th street.

Summarized, Taylor's testimony bearing upon the speed at which his car was traveling as he approached and entered the intersection, when he first saw Clayton's car, and the manner in which he undertook to negotiate the crossing follows:

He approached the intersection from the north at a moderate speed, well within the limit allowed by law, and when about 40 or 50 feet from 16th street, he looked east and saw no vehicles, and when about to enter or entering 16th street at a speed of from 10 to 15 miles an hour, he looked west and saw Clayton's car, which was down near Orcutt avenue. He undertook to describe its then location by saying, "* * * it was quite a ways down the street * * *"

&ast; &ast; &ast; &ast; &ast; &ast;

"He was pretty well down toward the other corner. Of course, that's a short block in there. We know that."

To further inquiries concerning the location of the Clayton car when he first saw it, he answered as below:

"A. No, he wasn't near my corner. He was down the street.

"Q. He was nearer Orcutt avenue?

"A. Yes, sir."

\*　\*　\*　\*　\*　\*

"A. I'll tell you when I entered, when I got on to 16th street or was driving over the sidewalk on the north side of 16th street, I saw the car coming all right."

\*　\*　\*　\*　\*　\*

"Q. But he was right on top of you at that time? He was right on top of you wasn't he?

"A. No, sir, I don't think that.

"Q. Didn't you tell Mr. Pitts he was?

"A. I told you what I have told everybody. All of us can be mistaken. I've told everybody that I saw the car, I turned, looked straight ahead and I never knew anything more and that's the straight naked truth."

\*　\*　\*　\*　\*　\*

"Yes, sir. I saw the car and he wasn't right on me either."

\*　\*　\*　\*　\*　\*

"\* \* \* I remember mighty well today when I first saw that car I saw it plenty far away."

When asked if he applied his brakes or made any effort to turn left to avoid a collision, he said,

"No, sir, I was going in the mouth of the street at that time when I give up—I mean when I didn't look any more. I was heading right into 16th street right into Roanoke."

He also said that when he had gotten "practically across the street" his car was struck on the right side by Clayton's car which he then saw for the second time when it was only a foot or two from his automobile.

The testimony of W. E. Pitts, who was at the time a police officer of the city of Newport News, was that he observed skid marks made by the Clayton car which were about 24 feet long, beginning in 16th street about 12 feet west of the intersection

and continuing into the intersection 12 feet. Debris in the street and these skid marks indicated that the actual collision took place a foot or two south of the center of 16th street and about 12 feet into Roanoke avenue. The officer said that no skid marks were found to have been made by ''Mr. Taylor's car except where his car spun around (indicating) after being in the collision.''

The impact was rather severe, and Taylor was thrown from his vehicle and rendered unconscious. Both automobiles were badly damaged and turned almost around in the street, coming to rest in the intersection well south of the center line of 16th street and near the northern end of the grass plot or island.

William R. Jennings, who appeared as a witness for Taylor, testified that when the cars approached and entered the intersection, he was about 125 feet to the east of Roanoke avenue walking in a westerly direction along the north sidewalk of 16th street, and thus facing and approaching the intersection. He says that he saw Taylor's car traveling at about 15 miles per hour ''coming into 16th street'', and as it ''was just entering 16th street,'' he observed the other car about 100 feet west of the intersection coming toward it as a speed which he estimated to be 25 miles an hour, and that when Taylor's car ''got to the center of the street, he picked up speed to get by and then there was a collision'' just ''a little more than past the middle'' of the intersection.

Clayton testified that as he approached the crossing, he was driving at about 25 miles an hour and when about 55 or 60 feet from Roanoke avenue he saw the lights of Taylor's car which were about the same distance from the intersection, and that car was traveling as fast or maybe a little faster than he was. He further said that as soon as he saw Taylor's oncoming car, he realized that Taylor was not going to stop, and he immediately applied his brakes which took effect about 12 feet from the intersection and that his skid marks continued from that point a distance of 24 feet to where the impact occurred.

The specific and chief reason urged by Clayton for setting aside the verdict and judgment is that Taylor by his own testimony has stated a set of facts and circumstances that precludes a recovery. It is argued that if Clayton's car was as far to the west as it was stated to have been by Taylor when he entered the intersection, then at the speeds that the respective cars were going, the collision could not have happened. It is then asserted

that Taylor's observation and estimate of the location of Clayton's car was so poor and ineffectual and his conduct so careless as to constitute contributory negligence on his part as a matter of law.

We agree that some of the statements made by Taylor are extravagant, and if the distances and locations mentioned by him are taken to mean and are treated as specific distances and locations, then it would appear to have been impossible for the collision to have happened if the automobiles were traveling at or about the speeds stated by him and other witnesses. However, when his testimony is weighed and considered as a whole, it does not appear to us that he undertook to specifically fix the speed at which his car entered 16th street, or the exact distance that Clayton's car was away at that time. He thought that the block between Roanoke avenue and Orcutt avenue was a short block. His estimate of distances and the location of Clayton's car may have been influenced by that belief, and the jury had a right to so conclude.

His testimony impresses us that he merely intended to give a rough estimate of the location and distance that he thought Clayton's car was away from Roanoke avenue when he entered the intersection rather than a statement of the precise location of the car.

"These statements of the respective parties as to such distances and speed are mere estimates, made in fleeting moments and related months after the occurrence. The fact that such estimates are not precisely correct does not render the testimony of either party incredible as a matter of law. It is merely a circumstance to be considered by the jury in weighing such testimony." *Sink* v. *Masterson,* 191 Va. 618, 623, 61 S. E. (2d) 863.

Clayton relies upon the doctrine and authority of *Massie* v. *Firmstone,* 134 Va. 450, 114 S. E. 652, wherein it is said:

"No litigant can successfully ask a court or jury to believe that he has not told the truth. His statements of fact and the necessary inferences therefrom are binding upon him. He cannot be heard to ask that his case be made stronger than he makes it, where, as here, it depends upon facts within his own knowledge and as to which he has testified."

Other decisions listed below are cited to sustain the principle that a litigant is bound by his own unequivocal factual statements upon matters within his knowledge and may not ask that

his testimony upon such matters be disregarded and other evidence in conflict therewith accepted to make out a case in his behalf. *Davis Bakery* v. *Dozier,* 139 Va. 628, 124 S. E. 411; *Bassett & Co.* v. *Wood,* 146 Va. 654, 132 S. E. 700; *Maryland Cas. Co.* v. *Cole,* 156 Va. 707, 158 S. E. 873; *Virginia Elec., etc., Co.* v. *Lenz,* 158 Va. 732, 164 S. E. 572; *Thalhimer Bros.* v. *Casci,* 160 Va. 439, 168 S. E. 433; *Lyric Theatre Corp.* v. *Vaughan,* 168 Va. 595, 191 S. E. 600; *South Hill Motor Co.* v. *Gordon,* 172 Va. 193, 200 S. E. 637; *Federal Land Bank* v. *Birchfield,* 173 Va. 200, 3 S. E. (2d) 405; *Chappell* v. *White,* 182 Va. 625, 29 S. E. (2d) 858.

We do not disagree with the principle invoked by plaintiff in error. However, for a litigant to be barred from recovery because his testimony is irreconcilable or at variance with physical facts or other certain proof, it must have been unequivocal and upon matter within his knowledge and so conclusively in conflict with other proved facts as to leave no room for difference of opinion between reasonable men.

The doctrine enunciated in *Massie* v. *Firmstone, supra,* was analyzed and discussed at length by Mr. Justice Eggleston in *Crew* v. *Nelson,* 188 Va. 108, 114, 49 S. E. (2d) 326. He concluded his discussion on that subject by saying:

"And, so, in a personal injury case, if the plaintiff, a person of average intelligence and in possession of his faculties, while detailing the circumstances of the accident, clearly and unequivocally testifies to facts which show as a matter of law that he has no case, he is bound thereby and cannot recover.

"Whether such has been the effect of the litigant's testimony must be determined from a fair reading of it as a whole, and not merely by reference to isolated statements which are adverse to his claim. See *Tignor* v. *Virginia Elec., etc., Co.,* 166 Va. 284, 290, 291, 184 S. E. 234, 236.

"Unless the testimony of the litigant shows clearly and unequivocally that he has no case, or where fair-minded men may differ as to the effect of his testimony, the litigant is not concluded thereby. In such a situation his testimony is to be considered by the jury along with all of the other evidence in the case. See *Tennes* v. *Tennes,* 320 Ill. App. 19, 50 N. E. (2d) 132, 139, and cases there cited."

It is to be remembered that Taylor was rendered unconscious by the collision. When his testimony, which does not undertake

to give specific distances and locations, is tested by the above principles, it does not clearly and unequivocally appear that he has no case against Clayton.

■ The right of the jury to interpret and weigh the testimony of a witness is entitled to wide latitude. It is primarily their province to measure and evaluate the factual meaning of the testimony of all witnesses, and unless it clearly appears that they have erred by abusing or transcending the wide scope of their authority as reasonable men, their findings of fact should not be disturbed. They saw and heard Taylor testify. What he intended and meant by the distances and locations given were matters that they were peculiarly fitted to pass upon.

■ We think that when all of the facts and circumstances in evidence are considered, the issues of whether or not Clayton was guilty of negligence which proximately caused the collision, and whether or not Taylor was guilty of negligence which efficiently contributed to the mishap were questions to be decided by the jury.

On direct examination of Jennings and after he had been interrogated concerning the manner and speed at which Taylor's car entered 16th street, the distance of Clayton's automobile from the intersection at that time, the speed at which the cars were traveling and where the impact took place, he was asked whether or not Clayton swerved his automobile either to his right or left, and his answer was that he did not. He was then asked, ''Did he have time to have stopped at the rate of speed he was going?''

Counsel for Clayton objected to that question because he said that it called for an opinion by the witness. The court overruled the objection, and the witness was permitted to answer as follows:

''A. Well, I have passed there quite a few times since then and it does look like he would have had time to *stopped* or to have turned.''

The ruling of the court was excepted to and assigned as error. Later in the trial certain questions were propounded to Clayton by his counsel concerning how promptly he stopped his car, which to some extent elicited that witness's opinion.

The questions and answers were:

''Mr. Ford: Was that a good stop from your experience driving that car?

"A. Never had to stop like that before.

"Mr. Ford: Every seen anybody else stop any better than that, driving 25 miles an hour, to avoid an accident?

"A. Can't say that for sure."

Though we do not approve the form of the question to which objection was made because it called for an answer which to some degree expressed the opinion of the witness, yet we have no difficulty in concluding that the ruling of the court did not constitute reversible error.

In *Trant* v. *Upton,* 159 Va. 355, 165 S. E. 404, a quite similar answer was elicited over objection. There the witness was asked: "Suppose that the Trant truck driver had kept straight over on the right hand side, would he have struck the child?" The answer given was "No, sir; I don't think he would."

In concluding that the ruling of the court was not reversible error, Mr. Justice Browning said:

"* * * Strictly speaking, the jury, with the facts before them, might have been as competent to judge of this matter as the witness, and thus the opinion evidence rule as to a non-expert witness was offended, but the harm, if any, was negatived by counsel for plaintiff eliciting from the witness the fact as to whether there was room enough to pass on the right."

The following authorities are of like import: *Rice-Stix Dry Goods Co.* v. *Self,* 20 Tenn. App. 498, 517, 101 S. W. (2d) 132; 3 Michie, *Law of Automobiles,* (3d ed.), section 258 (1), page 1222; 3 Wigmore, *Evidence,* (3d ed.), section 1929.

If any harm was here done by the answer complained of, we think that it was offset by Clayton's statement concerning the manner in which he brought his car to a stop.

We have considered but find no merit in any of the other assignments of error. None of them was argued at bar or seriously relied upon in the brief of plaintiff in error. Discussion of them would merely prolong this opinion and serve no good purpose.

The judgment is affirmed.

*Affirmed.*