# Richmond

EDNA VIRGINIA HEBNER v. WALTER S. SULLIVAN.

October 13, 1952.

Record No. 3964.

Present, Spratley, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Thos. A. Williams* and *Thos. A. Williams, Jr.*, for the plaintiff in error.

*John G. May, Jr.* and *Carrington Williams*, for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

Edna Virginia Hebner, plaintiff, sued Walter S. Sullivan and Charles I. Slemaker, defendants, for personal injuries sustained by her in an accident between two automobiles on May 30, 1951. The accident occurred about 3:30 p. m., in the city of Richmond, at the intersection of Grace and Mulberry streets.

Mrs. Hebner was walking south on Mulberry street and had reached the northwest corner of Mulberry and Grace streets. She intended crossing Grace street and continuing south down Mulberry. Slemaker was driving a Studebaker automobile west on Grace street, a one-way street for westbound traffic. Sullivan was driving a Hudson automobile in a northerly direction on Mulberry street which was open to two-way traffic. There was no traffic control signal for either street. A collision occurred between the two cars at the intersection, resulting in the Studebaker car swerving northwestwardly, striking the plaintiff and causing the injuries complained of.

Grace street is 36 feet 3 inches in width at this point, and Mulberry street is 29 feet 2 inches.

It was admitted that the plaintiff was in no way at fault, and the court so instructed the jury.

Upon the trial of the case the jury returned this verdict: "We, the jury, on the issue joined, find for the plaintiff against the defendant, Sleymaker, and assess her damages at $10,000.00, and we do further find for the defendant, Sullivan."

Plaintiff moved to set aside the verdict acquitting Sullivan of negligence on the ground that the evidence showed him to be guilty of negligence as a matter of law. The trial court was asked to do what the plaintiff now insists that we do—enter a judgment against Sullivan for $10,000, the sum fixed by the jury. The motion was overruled and judgment entered upon the verdict, to which exceptions were duly taken. To this ruling we granted a writ of error.

Slemaker seeks no relief from the judgment entered against him.

. Three assignments of error are listed. However, in plaintiff's brief and in oral argument it was agreed that the sole question for decision is: Was Sullivan guilty of negligence as a matter of law? If the answer to this question is in the affirmative, the judgment should be reversed and the plaintiff granted the relief requested. If the answer is in the negative, the judgment should be affirmed.

In order for plaintiff to prevail she must carry the burden of showing that Sullivan was guilty of negligence as a matter of law and that such negligence had some causal connection with the accident.

Sullivan here occupies a strong position as he is favored with the jury's verdict bearing the approval of the trial judge. *Neal* v. *Spencer,* 181 Va. 668, 26 S. E. (2d) 70.

Conflicts in the evidence and all just inferences that may be drawn therefrom have been resolved by the jury in Sullivan's favor and we must now view the evidence in the light most favorable to him. Under our rule the judgment may not be reversed unless it is clearly against the evidence or is without credible evidence to support it. *Clayton* v. *Taylor,* 193 Va. 555, 557, 69 S. E. (2d) 424, 426; Virginia Code, 1950, § 8-491.

With these principles in mind we now consider the evidence.

Officer E. G. Valentine, plaintiff's witness, who investigated the accident, testified that he talked to the defendants at the scene. He related what he learned thus: "Mr. Slemaker was traveling west on Grace street and the vehicle operated by Mr. Sullivan was traveling north on Mulberry street and Mr. Sullivan's vehicle struck the westbound vehicle full front into the left rear fender. After the impact, the westbound vehicle swerved over to the northwest corner and struck Mrs. Hebner with the right rear of his vehicle, hurling her some fifty feet over a parked vehicle * * * and he continued on west on Grace street in a turning motion, with the left rear colliding with the left rear of this parked vehicle, and then continued on west, colliding with his rear into the rear of another westbound parked vehicle, coming to a stop approximately 75 feet from the point of the impact.

"Q. Now, were there any marks in the street there, laid down by either car?.

"A. It was swerving marks laid down by the westbound vehicle operated by Mr. Slemaker and just a few feet of skid marks laid down by Mr. Sullivan's vehicle, the northbound vehicle, up to the point of impact, which did not indicate any speed.

"Mr. Smith: I didn't get that.

"The Witness: I said, the northbound vehicle didn't lay down any skid marks to amount to anything which would indicate any speed on his part."

The officer further stated that the skid marks of Sullivan's car began "just about at the south curb line and extended into the—just about the center of the intersection. I don't know exactly the length of the skid marks."

Wade V. Evans, a high school senior, was introduced by plaintiff. Young Evans saw the accident. He was 150 feet from the scene. He tells of seeing the collision and says: "* * * the right front fender of the Studebaker (Slemaker) car hit Mrs. Hebner and knocked her over a parked automobile, * * * knocked her around 60 feet up the street * * *. The Studebaker swerved on around and plowed its left rear fender into the parked automobile and kept on going backwards and ran into the back end of another parked automobile a little farther up the street." He estimated the speed of the Slemaker car as "going 45 and 50 miles an hour", and the Sullivan car's speed to be "around 25 miles an hour, 20 to 25 miles an hour". He also noticed the skid marks of the Hudson (Sullivan) car "over in the intersection where he had skidded around ten feet" before the impact; that the collision was "just about the center of the intersection".

Slemaker testified that he approached the intersection "doing 20 or 25 miles an hour, just killing time going home. * * * I was halfway through (the intersection) and I heard Mr. Sullivan's tires squealing and I looked back and he had darted into the intersection * * *. If he (Sullivan) was going at a normal rate of speed, I would have seen him before that. * * * If he had been driving at 20 or 25, like he said, I would have seen him in plenty of time."

In view of the testimony of plaintiff's witnesses Valentine and Evans, as to the speed of the Sullivan car, the jury had a right to reject Slemaker's testimony. Officer Valentine testified that the skid marks made by the Sullivan car showed nothing "which would indicate any speed on his part." And Wade Evans testified that Sullivan was "going around 25 miles an

hour, 20 to 25 miles an hour''. Evans placed Slemaker's speed at ''45 and 50 miles an hour.''

Sullivan testified that just before he got to the intersection he changed to second gear traveling at about 15 miles per hour, and that he picked up speed to about 20 miles per hour; that he looked east on Grace street and saw ''this car coming approximately half a block away''; that he did not notice at this time anything unusual about its speed ''because there were a lot of cars parked beside the street and I could not see too well, but he was a good distance away.''

Sullivan said he then looked west on Grace street and after he had gotten ten feet into Grace street he saw the Slemaker car for the second time as Slemaker was just entering the intersection; that he put on his brakes; that his car laid down skid marks 6 to 8 feet long; that at the time of the collision ''* * * I was just about to a stop. * * * The front end of my car come in contact with the rear fender of his car and they kind of hung together, and he had speed and as he went by me he pulled me about a fourth of the way around, * * *''; that at the time of the collision he (Sullivan) had gotten ''around 18 foot in it (Grace street). * * * He turned me about half-way around, which would be the length of the car, * * *''; that at the time of the impact ''I will say he (Slemaker) was driving around about 60 miles an hour. * * * When he tore loose from my car, he started to taking a spin. The back end of his car turned completely around and was going backwards west on Grace street. At the time he came to a standstill he was back in about 75 foot of Grace street west, against another car.''

Sullivan further stated that Slemaker's car after the collision hit one car parked near the corner and ''smashed the fender off of that, turned completely on around and back in against another one there'', which stopped him.

Instruction No. 15, offered, without objection, by defendant Slemaker, reads:

''The court instructs the jury that at the time and place of the collision in question the following state statute was in full force and effect: 'Section 46-238. RIGHT OF WAY; GENERAL RULE. When two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right, * * *. The driver of any vehicle traveling at an unlawful

speed shall forfeit any right of way which he might otherwise have hereunder.'

"And the court tells the jury that if you believe from the evidence that the defendant, Walter S. Sullivan, violated the statute set out and such violation constituted the sole proximate cause of the collision you should find in favor of the defendant, Charles I. Slemaker."

The jury evidently resolved that Sullivan did not violate the provisions of this statute. They had a right to accept Sullivan's version of the accident. No witness except Slemaker intimated that Sullivan was driving at an excessive rate of speed. If the jury adopted Sullivan's version, as it had a right to do, the Sullivan car was entering the intersection when the Slemaker car was half a block away, and Sullivan was practically one-third of the way across Grace street before Slemaker "approached or entered" the intersection.

■ As was said in the case of *Independent Cab Ass'n* v. *Barksdale,* 177 Va. 587, 591, 15 S. E. (2d) 112: "By the use of the phrase 'at approximately the same time', the legislature evidently meant that the determination of the question depended not upon a computation of time but upon the determination of a fact by the jury."

Admittedly, the speed limit at this intersection was 25 miles per hour, and the jury had the right to conclude from plaintiff's evidence that Slemaker was traveling at an unlawful speed and that any right of way accorded him was forfeited under the provisions of the statute. (Virginia Code, 1950, § 46-238)

It was not unreasonable for the jury to resolve that Sullivan saw Slemaker's car half a block away as he was entering the intersection, that at this time he saw nothing unusual about its speed, that he reasonably believed he could negotiate the 36-foot intersection in safety and that he would have done so had it not been for the then unknown excessive speed of the Slemaker car.

■ The evidence presented a factual situation with conflicts to be determined by the jury. In our jurisdiction this is so, unless the evidence is such that there should be no difference in the judgment of reasonable men on the evidence introduced and proper inferences to be drawn from it.

In the case of *Clayton* v. *Taylor, supra,* in which the facts are somewhat similar to those under consideration here, Mr. Justice Miller had this to say: "The right of the jury to interpret and

weigh the testimony of a witness is entitled to wide latitude. It is primarily their province to measure and evaluate the factual meaning of the testimony of all witnesses,. and unless it clearly appears that they have erred by abusing or transcending the wide scope of their authority as reasonable men, their findings of fact should not be disturbed. They saw and heard Taylor testify. What he intended and meant by the distances and locations given were matters that they were peculiarly fitted to pass upon." (193 Va., at page 562).

It is argued by plaintiff that the jury believed Sullivan guilty of negligence. This argument is based upon a question asked by a juror during deliberations, as follows: "The question has arisen in connection with finding against either or both the defendants—whether the jury could fix the degree. In other words, could you say that they are both guilty, then it is presumed that the .damages would be assessed fifty-fifty? Would it be possible to say that one was less guilty than the other?

"The Court: No, you could not do that.

"The Juror: That was our opinion, but the question was raised and we had no way to answer it.

"The Court: You either find against both defendants, or one defendant, or in favor of both defendants."

▪ Plaintiff argues, "The deduction is inescapable from the language of the jury quoted that at least some of the jury were of the opinion that Sullivan was negligent * * *". The answer to this is the jury's verdict, "* * * and we do further find for the defendant, Sullivan." Had the jury been of the opinion that Sullivan was guilty of negligence which had some causal connection with the accident they would have said so.

As was said in *Williams* v. *Commonwealth,* 85 Va. 607, 609, 8 S. E. 470, "* * * It was, however, proper for the court to fully and completely respond to inquiry which might come from the jury for information touching their duties; and if this was done, and correctly done, then neither side had any valid right to demand more. * * *" See also, *Standard Paint Co.* v. *Vietor & Co.,* 120 Va. 595, 607, 91 S. E. 752; 10 M. J., Instructions, § 11, page 199.

We are of the opinion that the issue as to Sullivan's negligence was one of fact for the jury.

For the reasons stated the judgment is

*Affirmed.*