# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## Dinwiddie W. Dodd v. William K. Coakley and Beulah E. Coakley, Partners Trading as Southern Dry Cleaning Co., et al.

January 25, 1954.

Record No. 4136.

Present, All the Justices.

The opinion states the case.

*Boothe, Dudley, Koontz & Boothe,* for the plaintiff in error.

*Albert V. Bryan, Jr.,* for the defendants in error.

BUCHANAN, J., delivered the opinion of the court.

Frank Parsons Thomas, an employee of the Coakleys, trading as Southern Dry Cleaning Company, died from injuries received in a collision between a truck he was driving for the Coakleys and an automobile operated by Dinwiddie W. Dodd. The widow of Thomas made claim against the Coakleys under the Workmen's Compensation Act and the Industrial Commission made an award to her which was being paid by the insurance carrier of the Coakleys. The Coakleys then brought this action against Dodd pursuant to § 65-38 of the Code,[1] alleging that Thomas' death was caused by Dodd's negligence. No question was raised as to the right of the Coakleys to maintain the action. It was treated as being for the benefit of all interested parties and the recovery was apportioned among the insurance carrier, the widow and the plaintiffs' attorney.

A trial by jury resulted in a verdict for the plaintiffs, upon which the court entered the judgment appealed from. The negligence of the defendant, Dodd, is here conceded and as stated in his brief, the one principal question involved is whether Thomas, the deceased, was guilty of contributory negligence as a matter of law.

---

[1] Section 65-38, part of the Workmen's Compensation Act, provides: "The making of a lawful claim against an employer for compensation under this Act for the injury or death of his employee shall operate as an assignment to the employer of any right to recover damages which the injured employee or his personal representative or other person may have against any other party for such injury or death, and such employer shall be subrogated to any such right and may enforce, in his own name or in the name of the injured employee or his personal representative, the legal liability of such other party. * * * ." See *Smith* v. *Va. Ry. & P. Co.,* 144 Va. 169, 131 S. E. 440; *Noblin* v. *Randolph Corp.,* 180 Va. 345, 23 S. E. (2d) 209.

Under the familiar rule the judgment for the plaintiffs must be sustained unless contributory negligence on the part of Thomas is shown by uncontroverted evidence. If that question depends on a state of facts upon which reasonable men might arrive at different conclusions, it is then a question for the jury and its verdict approved by the trial court is conclusive. *Yellow Cab Co.* v. *Gulley*, 169 Va. 611, 616, 194 S. E. 683, 685; *Clayton* v. *Taylor*, 193 Va. 555, 562, 69 S. E. (2d) 424, 429.

The accident occurred at about 3:30 p. m. on August 1, 1950, a clear day, at the right angle intersection of Oronoco and Payne streets, in Alexandria. Oronoco runs east and west and is 40 feet 8 inches wide; Payne runs north and south and is 39 feet 4 inches wide. Oronoco is a through street at this intersection, while Payne is a stop street with stop signs at its south and north entrances into Oronoco. The speed limit in the area was 25 miles an hour.

Thomas was driving the Coakley truck north on Payne street. The truck had a van type body and on its right side was a full-length panel painted a lighter color than the rest of the body, on which in large lettering was the name "Southern Dry Cleaning Co." Dodd, the defendant, with his wife beside him, was driving a Chevrolet coupe west on Oronoco. The left front of the Dodd car struck the right rear of the truck, the force of the blow on the car being at the front of its left front fender and on the truck being just behind its right rear wheel. The rear of the truck was knocked around to its left and the truck turned over on its left side in Payne street, immediately north of Oronoco, facing east and pinning Thomas under it. The car came to a stop in the northeast quadrant, facing north or northwest into Payne street. The car left skid marks on the street for a distance of ten to sixteen feet. The truck left no skid marks.

A police officer who arrived after the accident testified as to the physical facts just stated and introduced photo-

graphs of the intersection and of the vehicles. The only witness for the plaintiffs to the accident itself was a young woman who was standing in her yard at the northwest corner of the intersection. She testified that she saw the truck as it approached the intersection. She had some friends who drove trucks for the Coakleys and she was looking to see whether she knew this driver, but she did not know him. As Thomas came to the intersection, driving on the right side of Payne street, he stopped at the stop sign and his motor died. He started it up again, looked both ways on Oronoco and proceeded slowly across the intersection. From where the witness stood she could see about a block down Oronoco to the east. As Thomas looked she also looked and saw no car coming from either the east or from the west. When the rear of the truck was past the middle of the intersection, and its front end was about even with the curb on the north side of Oronoco, she heard the crash. She did not see the car that hit the truck but she saw its shadow on the pavement, which looked like it was going "kind of fast." She said that when the truck started across there was no car approaching in the block of Oronoco east of Payne street. Some cars were then parked along the north side of Oronoco but she did not remember whether there were any parked on the south side.

The police officer testified that as one entered the intersection from the stop sign, he normally could see two blocks to his right, or east, but he did not know whether any cars were parked on the corner at the time of this accident.

Dodd's testimony was that he turned right, or west, on Oronoco from Henry street, two blocks east of Payne; that at Fayette street, one block east of the intersection, a little girl on a bicycle turned west on Oronoco and he drove slowly behind her; that when he reached Payne he looked right and left, saw nothing coming and then when the front of his car was ten or twelve feet into the intersection he saw "this object" swing into him, whereupon he

swung his car to the right and by that time this truck had struck his car, "came into the side of it." He said he would venture to say he was then not going faster than ten to fifteen miles an hour. As to the speed of the truck, he said "I could not say how fast. I would think, Mr. Boothe, it was coming right fast. I know it was coming really fast." There were some cars, he said, parked along on his right on Oronoco, and one parked on Payne, south of Oronoco. Asked where he was when he looked, he replied, "I was entering up to the intersection. Of course, just up to it, and of course, I looked each way, as usual, and of course I seen nothing, and then I started on through." Again he said his car was abreast of the curb line of Payne when he looked and he did not see the truck at all.

The defendant's wife, his only other witness, testified they followed the little girl on the bicycle and that she didn't think her husband was going over eight or ten miles an hour; that "we was just entering into the intersection when this truck—we saw it just when we got in the intersection and I said to him, 'Look out for the truck,' and he jerked the car around and by that time the car hit us."

Plaintiffs' witness said she did not see any little girl riding a bicycle and she is not otherwise accounted for.

From the evidence the jury had a right to conclude that the truck was well into the intersection before Dodd's car reached it. Before it was struck the truck had proceeded through the intersection a distance of 40 feet until its front end was opposite the north curb of Oronoco. Had the defendant been looking, necessarily he would have seen an object as big as this truck, proceeding across the intersection in front of him from its stopped position at the stop sign. As the jury could reasonably have decided, the defendant drove blindly into the intersection, into the truck that was right in front of him, at a speed sufficient to skid the wheels of his car ten to sixteen feet, and then strike the extreme right rear end of the truck with enough force to knock it around and turn it over.

It was made certain by the evidence that the truck stopped just before it entered the intersection. It is not certain where the defendant's car was when the truck started out from the stop sign and proceeded into the intersection. Plaintiffs' witness, who was in her yard, looked east, as Thomas looked, down Oronoco as the truck started across, and she saw no car coming. Where the car was at that time is not shown. Whether the driver of the truck saw it, nobody can say. But if he did see it and it was, as it could have been, at such a distance away that he reasonably thought it was safe for him to proceed, he was not guilty of negligence as a matter of law. If reasonable men could differ on that point under this evidence, and we think they could, then the question was for the jury.

Contributory negligence is not presumed. The burden of that defense is on the defendant, and it must be established either by the defendant's evidence or the plaintiff's evidence. We cannot say as a matter of law that it was here established by either. In order so to conclude, it would have to be presumed, contrary to a reasonable inference from the evidence, that when Thomas looked he did so carelessly and that he started across when Dodd's car was so near that a reasonable person would have known that it was not safe to cross.

*Temple* v. *Ellington*, 177 Va. 134, 12 S. E. (2d) 826, involved a situation similar to the one here. There, in the morning of a clear day, Temple drove his truck north from a private road, where it was his duty to stop (Code § 46-240), into a main east-west highway. He had a clear view for some 500 feet to the west. After proceeding through the intersection until his truck was within about four feet of the north edge of the hard surface of the main highway, he was struck by a car driven by Moses approaching from the west. We said that the statute requiring him to stop must be given a reasonable construction and that when a driver on a private road approaches an intersection, stops and looks in both directions, he is not guilty of

negligence as a matter of law if he enters the intersection under a reasonable belief that it is safe to cross. In holding that the question of Temple's negligence was for the jury, we said "the jury might have believed that Mr. Temple saw the Moses car and acting as a prudent person thought the car far enough away to permit him safely to enter the highway ahead of the Moses car."

In *Leo Butler Co. v. Wilbun,* 192 Va. 263, 64 S. E. (2d) 738, we said that what is a proper lookout in a given situation is a question which can only be answered by the facts of the particular case; that the duty is to look with reasonable care; that generally negligence is for the jury and should not be taken from it unless there is no real conflict. That case also involved a collision at an intersection in Alexandria, and we held on the facts shown there that it was for the jury to decide whether the plaintiff was guilty of contributory negligence.

In situations similar to the one here, contributory negligence was held to be a jury question in these cases, among others: *Angell* v. *McDaniel,* 165 Va. 1, 181 S. E. 370; *Greenleaf* v. *Richards,* 178 Va. 40, 16 S. E. (2d) 374; *Brown* v. *Wallace,* 184 Va. 570, 35 S. E. (2d) 793; *Caldwell* v. *Parker,* 191 Va. 471, 62 S. E. (2d) 34; *Clayton* v. *Taylor, supra,* 193 Va. 555, 69 S. E. (2d) 424; *Hebner* v. *Sullivan,* 194 Va. 259, 72 S. E. (2d) 689; *Tellis* v. *Traynham,* 195 Va. 447, 78 S. E. (2d) 581.

The defendant relies on a number of cases[2] in support of his contention that Thomas, the driver of the truck, was guilty of contributory negligence as a matter of law. The distinguishing features of some of those cases are sufficiently

---

[2] *Nicholson* v. *Garland,* 156 Va. 745, 158 S. E. 901; *Johnson* v. *Harrison,* 161 Va. 804, 172 S. E. 259; *Virginia Elec. & Power Co.* v. *Vellines,* 162 Va. 671, 175 S. E. 35; *Brown* v. *Lee,* 167 Va. 284, 189 S. E. 339; *Yellow Cab Co.* v. *Gulley,* 169 Va. 611, 194 S. E. 683; *Ellett* v. *Carpenter,* 173 Va. 191, 3 S. E. (2d) 370; *Remine* v. *Whited,* 180 Va. 1, 21 S. E. (2d) 743; *Moore* v. *Vick,* 181 Va. 157, 24 S. E. (2d) 429; *Stillman* v. *Williams,* 181 Va. 863, 27 S. E. (2d) 186.

stated in *Leo Butler Co.* v. *Wilbun, supra,* 192 Va. at page 268, 64 S. E. (2d) at pages 740-41. Similar distinguishing facts were present in others; *e.g.*, in *Yellow Cab Co.* v. *Gulley, supra,* 169 Va. 611, 194 S. E. 683, the plaintiff's driver relied on his horn instead of his brakes and drove into an intersection "in the face of a known danger;" in *Stillman* v. *Williams,* 181 Va. 863, 27 S. E. (2d) 186, "suddenly, without warning, or signal, plaintiff turned left and drove his car 2 to 4 feet across the center line of the highway immediately in front of defendant's speeding car;" in *Nicholson* v. *Garland,* 156 Va. 745, 158 S. E. 901, the plaintiff was not only traveling at an excessive speed, but also failed to look. In these cases there was no room for difference of opinion among reasonable men as to negligence and hence the question was one of law.

Two additional assignments of error, one relating to the rejection of some testimony and the other to the refusal of an instruction, were not pressed in argument and involved no error.

The judgment below is

*Affirmed.*