## Richmond

OTTO LINDBERG v. EMMETT GOODE.

May 4, 1959.

Record No. 4914.

Present, All the Justices.

The opinion states the case.

*Albertis S. Harrison, Jr. and Willis W. Bohannan* for the plaintiff in error.

*Harold L. Townsend*, for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The plaintiff, Emmett Goode, was struck and injured by an automobile driven by the defendant, Otto Lindberg, and on a jury trial he recovered a verdict for $10,000. The trial court granted judgment on the verdict and the defendant has appealed. The errors assigned are that the evidence was insufficient to establish that he was negligent, and if he was then the plaintiff was guilty of contributory negligence.

The accident happened on August 24, 1955, about 11 a.m. on U. S. 301, in Greensville county. At that point Route 301 is a four-lane highway running north and south, having two southbound and two northbound lanes divided by a grass plot 30 feet wide, the travel lanes being each 10 feet wide and marked by a white line between them. The day was clear and the road was dry and straight; it was open country and visibility was good for at least a quarter of a mile each way from the place of accident. Lindberg, the defendant, was driving south with his wife on the front seat with him. The plaintiff was walking across the highway from west to east. No other traffic was on the road and these three were the only eye-witnesses.

The plaintiff, who was 52 years old, gave this version of the accident:

He was driving north in his truck when he saw a heavy pile of lumber near the west side of the road. He parked his truck on the east shoulder, crossed the road, examined the lumber, then came back up on the west shoulder where he "took a look up the road" to the north and saw this car coming. It was then "just about a quarter of a mile as I judge around the airport," or what used to be the area used for an airport. He then walked on across the highway and when he got three or four feet across the white line dividing the two southbound lanes he looked again and the car was "about I guess" 35 yards away, with two wheels about two feet to its left of the white line. He then "made another step or two and it went into a zig-zag. Then I figured the best thing for me to do was to turn back and I walk back and that was the time I got hit." When he turned to go back "one stride would have put me on the grass strip." After the car went into a zig-zag, he said, "I knew that was my best chance to turn back."

He was knocked down but not unconscious. The car, he said, "stopped on down the road." The defendant came back and took him to a doctor. His right leg and right arm were broken. There was a two-inch wound midway of the lower part of his right leg and a large cut across the top of his right foot. He said that his right arm struck the windshield on the right side and the front bumper injured his leg, but he also said that the last part of the car he saw "going around [him] was the bumper."

A police officer called by the plaintiff testified that after the plaintiff was brought to the doctor's office he went with the defendant and Mrs. Lindberg to the scene of the accident. The plaintiff's truck was parked opposite the point where the defendant said the accident happened and opposite a pile of lumber on the west side of the road. He found no debris, tire marks or anything to indicate an accident. There was no indication the car had entered the grass strip. He said the defendant told him that at the time of the accident he was driving 57 miles an hour; that when he looked up the plaintiff was right in front of him; that he did not have time to apply his brakes but pulled to the left into the passing lane to miss him but the plaintiff walked into him and he struck him at about the center of the passing lane, *i.e.*, the eastern of the two southbound lanes. He examined the Lindberg automobile and found that the right windshield was broken but he saw no other markings on the car.

Lindberg, who was 79 years old, testified that as he approached the place of accident he could see down the road almost a mile; that he first saw the plaintiff about 100 feet from him walking slowly toward the pavement and about five feet from it. He assumed the plaintiff would stop when he reached the pavement; there was nothing to indicate he would not do so, but when his car was only about 40 feet away he realized the plaintiff was going to continue; that he then had time only to swerve to the left to avoid him and passed in front of him, "and with him walking and with me speeding he caught the windshield." He supposed it was the plaintiff's arm that hit the windshield and that it was the rear bumper that caught his leg as he was ahead of the plaintiff and the front bumper could not have struck him. There were no marks on his car afterwards except on the right of the windshield. After he swerved he stopped as soon as he could, which was down the road about 150 feet. He was driving between 50 and 55 miles an hour—"maybe 55." He

said the plaintiff had not reached the white line when he struck him, but the biggest part of the car was then over the line.

Mrs. Lindberg testified she was looking at the scenery and she first saw the plaintiff when he was at the edge of the road, stepping into the highway; that the plaintiff was then looking down and he walked into the car and broke the windshield in front of her.

It is obvious that when an automobile strikes a pedestrian under the circumstances shown by this evidence—a straight road, a clear day, unobstructed vision, and no other traffic—there is negligence involved, negligence of the motorist or of the pedestrian, or of both.

The evidence stated above is sufficient in our opinion to support the conclusion of the jury that the defendant was negligent. The original verdict returned by the jury indicated that they found him guilty of negligence in failing "to keep and maintain a proper lookout." He did not see the plaintiff, he said, until he was within 100 feet of him and he did not know why he did not see him sooner. The jury could have found the reason in his statement to the police officer that when he "looked up" this man was right in front of him. Coupled with this evidence was also evidence from which the jury could find that the defendant was driving in excess of the speed limit and did not have his car under proper control for passing one whom he saw or should have seen close to the road and walking toward it as if to cross.

But if the defendant was negligent in not seeing the plaintiff in a situation of potential danger in time to have avoided him by exercising ordinary care, it is clear that the plaintiff was also negligent in failing to see or to heed the speeding car dangerously close as he started across the road. Each had the duty of looking and their opportunities of seeing were equal. It is true that the plaintiff testified on direct examination that when he started across the road this automobile was a quarter of a mile away. On cross-examination he said that when he first came up on the shoulder of the road and was right at the edge of the pavement he looked and saw this car coming a quarter of a mile away, "every bit of it." "I had plenty of time," he said, "to get across even if the car had stayed in its place. Because I could see it. It was a nice clear day." He next saw the car, he said, when he had crossed the white line and was within about two strides of the grass plot or, as he said on direct examination, about three or four feet across the white line. And at that point he looked to his left and saw the car "I reckon 25 yards" from him. He then

took another step, putting him, as he said, within one stride of the grass plot. Then he saw the car go "into a zig-zag," whereupon he turned and started back across the highway and was struck.

It could not of course have happened that way, or even approximately that way. The automobile would have had to be running around 200 miles an hour for the accident to have happened in the manner the plaintiff described. It is not a sufficient explanation to say, as the plaintiff now does, that he was not attempting to give the exact distance, but merely an estimate, and that the estimate should give way to the description that he saw the car "around the airport." [1] But that does not relieve the difficulty. The plaintiff was emphatic as to this distance, which was closely related to the question of his due care in starting across. He repeated on cross-examination that the car was "every bit" of a quarter of a mile away when he started across. He was emphasizing that it was certainly not less than that distance. He offered no evidence, and there is none in the record, to show that "around the airport" was some distance less than a quarter of a mile. To discard his testimony that the car was every bit a quarter of a mile away would leave the case without any affirmative evidence as to this important element other than the testimony of the defendant and his wife that the car was only about 40 feet away when the plaintiff walked into the road and was struck as the defendant swerved to the left to avoid hitting him.

The evidence, in any aspect of it, compels the conclusion that the car was very much closer when he started across than he claimed it was. The greatest speed of the car shown by the evidence was 57 miles an hour. The plaintiff testified that as he started from the western edge of the highway he walked "in a good pace" on across the road. It may be assumed that this meant at least three miles an hour. On that basis the car was going a little less than twenty times as fast as the plaintiff was walking, and if the plaintiff was struck when he was about the middle of the passing lane, as his evidence indicated, the car was less than 400 feet in distance and about 4½ seconds in time from him when he started across.

It necessarily follows that he did not look before he started to cross, as defendant's evidence indicated, or if he looked he failed to see that the car was dangerously close but walked on across without again looking at it or paying any attention to it until, as he says, he

[1] Cf. *Sink v. Masterson*, 191 Va. 618, 623, 61 S. E. 2d 863, 865; *Clayton v. Taylor*, 193 Va. 555, 560, 69 S.E. 2d 424, 427.

was across the white line. In either event his negligence was a contributing cause of the unfortunate accident, and his case falls within the pattern of the following cases in which recovery was denied because of the contributory negligence of the plaintiff: *Stephen Putney Shoe Co.* v. *Ormsby's Adm'r*, 129 Va. 297, 105 S. E. 563; *Frazier* v. *Stout*, 165 Va. 68, 181 S. E. 377; *Yellow Cab Co.* v. *Gulley*, 169 Va. 611, 194 S. E. 683; *Jenkins* v. *Johnson*, 186 Va. 191, 42 S. E. 2d 319; *DeMuth* v. *Curtiss*, 188 Va. 249, 49 S. E. 2d 250; *Hooker* v. *Hancock*, 188 Va. 345, 49 S. E. 2d 711; *Manhattan, etc., Corp.* v. *Williams*, 191 Va. 489, 62 S. E. 2d 10; *Whichard* v. *Nee*, 194 Va. 83, 72 S. E. 2d 365.

We need not point out the distinguishing features of the cases relied on by the plaintiff.[2] As stated in *Hooker* v. *Hancock, supra,* 188 Va. at 356, 49 S. E. 2d at 716, each case presents its own problem. The pedestrian is required to exercise such care as an ordinarily prudent person would exercise under the existing circumstances. "If, under such conditions, he carelessly undertakes to cross without looking, or, if looking, fails to see or heed traffic that is obvious and in dangerous proximity and continues on into its path, he is guilty of negligence as a matter of law." (188 Va. at 356)

Another aspect of the plaintiff's evidence is fatal to his right to recover. In his brief he refers to the grass plot as a place of safety from all traffic. It would have been under the evidence in this case, as the automobile did not enter upon it. Yet the plaintiff was, he said, within one step of this grass plot when he saw the defendant's car, then about he guessed 35 yards away, or maybe 25 yards as he also said, go into a zig-zag, whereupon he turned and started back across the road right into the path of the oncoming car.

Putting aside the unusual action of a car zig-zagging at a speed of 57 miles an hour, still the plaintiff gave no reason for concluding that his best chance was to walk back into the path of the car when one additional step on the way he was going would have put him in a safe place. The plaintiff would excuse this act of folly on the ground of sudden emergency. But that doctrine is not an unlimited shield. It relieves from the consequences of negligence only when the person claiming its benefit was without fault in creating the emergency and when he responded to it by exercising such care as

---

[2] *Mouser* v. *Griffith*, 198 Va. 709, 96 S. E. 2d 98; *Rhoades* v. *Meadows*, 189 Va. 558, 54 S. E. 2d 123; *Smith* v. *Carpenter*, 198 Va. 91, 92 S. E. 2d 275; *Dodd* v. *Coakley*, 195 Va. 554, 79 S. E. 2d 648; *Bogstad* v. *Hope*, 199 Va. 453, 100 S. E. 2d 745.

a man of ordinary prudence would be expected to exercise in a like situation. *McGowan* v. *Tayman*, 144 Va. 358, 366-8, 132 S. E. 316, 318-9; *Southern Passenger Motor Lines* v. *Burks*, 187 Va. 53, 60, 46 S. E. 2d 26, 30. Not only was the plaintiff not free from fault in bringing about the emergency, but it seems clear that no reasonably prudent person would have reacted as he said he did on this occasion.

The evidence here calls for the application of the principle thus stated in *Garrison* v. *Burns*, 178 Va. 1, 8, 16 S. E. 2d 306, 308:

"While we are not unmindful of the weight which attaches to the verdict of a jury when the verdict has been approved by the trial court, it is the imperative function of this court to set aside the verdict of a jury, even though approved by the trial court, when the evidence does not warrant the finding of the jury."

The judgment appealed from is reversed and final judgment for the defendant will be entered.

*Reversed and final judgment.*