# Richmond

VIRGINIA STAGE LINES, INC. v. LEONARD J. DUFF, ADM'R, ETC.

October 14, 1946.

Record No. 3134.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*William Kinckle Allen* and *Caskie, Frost & Watts*, for the plaintiff in error.

*Williams, Robertson & Sackett* and *Walter H. Carter*, for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

This is an action instituted by the administrator of Eubren Marshall Duff against the Virginia Stage Lines, Incorporated, for the wrongful death of decedent. From a judgment for $8,000, entered on the jury's verdict, defendant obtained this writ of error.

The main contention of the defendant is that the evidence is insufficient to sustain the verdict of the jury.

The accident occurred at 9:30 P. M., on January 20, 1945, in Amherst county, at or near the intersection of

594

U. S. Route 29 with Route 1210. Route 29 extends approximately north and south and is a main artery of travel. Its hard surface is 30 feet wide and is divided by broken white lines into three traffic lanes. Route 1210 begins on the western side of Route 29 and leads off in a northwesterly direction at an angle of 47 degrees. While its average width is 12 feet, it is bell-shaped with its mouth approximately 68 feet wide at its jointure with Route 29. The bus of the Virginia Stage Lines, Inc., operated by Lloyd Hudson, was proceeding north from Lynchburg over Route 29 to Route 1210, and over this route to Monroe. The truck, with decedent at the wheel, was traveling south on Route 29. From the crest of a hill north of the intersection with 1210, the place of the accident, Route 29 is straight for about 1900 feet. This straightaway extends for approximately 900 feet south of the intersection, thus making a total straightaway of 2800 feet. From the intersection south, the roadway is up a six per cent. grade. From the intersection north, it is down a seven per cent. grade for approximately 600 feet to the culvert over Watts branch and up a less grade from that point north to a schoolhouse 1300 feet away. The bus was proceeding downgrade at a moderate rate of speed, and the truck at a speed estimated to be from 35 to 70 miles an hour. As the bus, traveling slowly at an angle, reached a point four feet west of the western edge of Route 29, its left front collided with the left front wheel of the truck. When the vehicles came to rest, the front of the truck was wedged against the bank south of the intersection with its left rear wheel resting against the left front of the bus, the front wheels of the bus having been pulled or dragged sideways approximately three feet; the body of the bus was at an angle across Route 29, the rear extending halfway across the middle lane. The front of the bus stopped six feet from the extreme south (or left) side of Route 1210 and four feet from the western edge of Route 29. In other words, although the bus was sitting at an angle, it blocked traffic for at least fifteen feet across the western half of Route 29. The dam-

age to the bus was slight; the truck was practically demolished. Eubren Marshall Duff, the driver, and George Harris Duff were killed. The other two occupants of the truck apparently received only minor injuries.

In determining whether to sustain or set aside a verdict approved by the trial court, this court must ascertain whether the verdict is plainly wrong or without evidence to support it. The verdict settles all conflicts in the testimony. The successful litigant is entitled to have all reasonable inferences drawn in his favor. If, upon this view of the evidence, reasonable men may differ as to the conclusion to be drawn, the finding of the jury cannot be disturbed although the court, if sitting as a jury, might have reached a different conclusion. With these principles in mind, we review the testimony upon which defendant relies.

The gravamen of defendant's contention is that the driver of the truck was guilty of contributory negligence as a matter of law, in that (1) he failed to keep a proper lookout, (2) he was driving at an unlawful and terrific rate of speed, and (3) he failed to apply his brakes and stop his truck in time to avoid the collision.

This contention is based on the inference drawn by defendant from the difference in the size and weight of the two vehicles, the physical evidence visible at the scene of the accident, and the location on the highway of the truck at the time the bus began to make its turn into the secondary road.

The bus was 7¾ feet wide, 8 feet in height, 27 feet 10 inches in length and weighed 11,515 pounds unloaded. It had a seating capacity of 35 passengers and at the time of the accident was crowded, with many passengers standing in the aisle. The two headlights and five marker lights on the front of the bus were illuminated. The truck was a 1½ ton truck, with a short wheel base of 131½ inches, weighing, with the cab, 3,490 pounds. On the truck was a dump body weighing 1,800 pounds, making the total weight 5,290 pounds unloaded. On the seat in the cab were

Eubren Marshall Duff, the driver, George Harris Duff in the middle, and Clarence Burley on the right with Arthur Duff sitting in his lap.

The impact caused the hood of the truck to be thrown forward 36 feet, the body to be torn from the chassis, and the occupants of the cab to be thrown out. The two who were killed seem to have been lying under part of the wreckage. The tracks of the truck indicated that it pulled to its right on the shoulder 32 feet before it reached the northern edge of Route 1210 and continued across this highway for a distance of 50 feet before the impact.

The two surviving occupants of the truck testified that the four occupying the cab were seated in such manner as not to interfere with the decedent in his operation of the truck; that, as the truck came down the grade to Watts branch, they saw the headlights of a vehicle approaching from the south; that, as the truck crossed the culvert over the branch, the speedometer showed the speed to be 35 miles per hour, which speed was reduced to some extent as the truck continued up the seven per cent grade; and that, while they were not paying close attention to the approaching bus, they did not see any signals indicating that the bus intended to make a left turn, nor did they know just when the operator of the truck saw the bus turning into the intersection.

Other evidence tends to show that the truck, traveling at 20, 30 or 35 miles an hour, could have been stopped in 18, 40 or 53 feet, respectively.

The bus driver and several passengers testified that some distance south of the intersection the bus crossed from the left lane into the middle lane of traffic. The bus driver testified that, while he gave no hand signal for a left turn, he blinked his headlights repeatedly, and turned a switch which lighted arrows on the front of the bus indicating that a left turn would be made. The left side of the bus crossed into the west lane before the bus began to make the left turn. The headlights of the oncoming truck were seen and estimated to be at the bottom of the hill, 638 feet from

the intersection. The driver then began to turn the bus into Route 1210 on its extreme southern edge and before he reached the center of the intersection. He was concentrating his attention on possible traffic on the secondary highway and did not look down Route 29 again for a vehicle which he knew was approaching from the opposite direction until he heard a passenger yell: "Look out. He is going to hit us." He immediately applied his brakes with all his force, but too late to avoid the collision.

There was no testimony indicating that the mechanical or electrical device on the bus for a left turn, to be used in place of a hand signal, had been approved by the director of the Division of Motor Vehicles, as required by Code, sec. 2154 (122), (b). Even if such evidence had been introduced, the testimony as to whether or not the signals were given is in conflict, and the verdict of the jury settled this conflict contrary to the contention of defendant.

After the accident, the defendant placed a vehicle representing the bus 42 feet south of the intersection and a vehicle representing the truck 638 feet north of the intersection and crossing the culvert over Watts branch, and caused the vehicles to be driven in the manner and at the speed it claimed the vehicles were traveling immediately before the collision. This test revealed that it took the bus four seconds to complete its turn into the intersection and that it would cross the southbound traffic lane on Route 29 in time to allow the vehicle representing the truck, traveling 50 miles an hour, to pass behind it on a straight course in safety.

The results of this test cannot be accepted as conclusive proof of the speed of the truck because the witnesses who testified as to the locations of the truck and the bus at a given moment are uncertain as to the exact location of the two vehicles. One witness places the bus at a city block from the intersection, another 60 feet from the intersection. The bus driver himself said frankly that he could not tell by the lights of the truck whether it was 100 or 500 feet from the intersection when he began to make the turn.

Defendant contends that the fact that the truck ran 82 feet after leaving the hard surface of Route 29 is conclusive evidence that the truck driver was not keeping a proper lookout and that, had he been keeping a proper lookout, he could have stopped his truck in time to avoid the collision; or that he was driving the truck at such terrific speed that he could not stop it in time.

The jury, as they had a right to do, declined to accept this inference from the evidence and very probably inferred that the trail left by the truck tended to prove that its driver saw the lights of the approaching bus as it veered to his side of the highway, and that, in order to avoid a collision, he deliberately drove his truck on the muddy shoulder, thereby giving the oncoming vehicle the entire 30 feet of the hard surface. The tracks on the muddy shoulder and across the 50 feet of the secondary highway indicate that there was no skidding, and, as the tracks are straight and veer farther and farther away from Route 29, it would seem that the movement was made deliberately. Another fair inference from the tracks and the physical facts is that decedent, after leaving his direct line of travel and somewhere within the 82 feet, realized that the bus was not keeping its straight course down Route 29 but was going to make a left turn. The negligence of the driver of the bus, in failing to give proper signals for a left turn, in failing to see that the turn could be made without endangering others, and in turning before reaching the center of the intersection, made the danger of a collision imminent. The decedent, confronted with this emergency through no fault of his own, was forced to decide in a split second whether he would apply his brakes and stop his truck or leave his truck in high gear and attempt to pass across the mouth of 1210 before the two vehicles collided. This is an inference and a reasonable explanation of the truck's leaving the hard surface of Route 29 and reaching the point of collision in gear and at undiminished speed. The other physical facts show that the driver of the truck failed to avoid the collision by less than a foot. The force of the impact was on the

extreme left front of the bus, which had gone only four feet off of Route 29. Under these circumstances, the defendant cannot complain of the fact that the driver of the truck did not, in the emergency created by his own negligence, elect the wisest course to pursue. If the jury believed, as it had a right to believe, that the driver of the truck used reasonable care under all the circumstances to avoid the collision, its finding is conclusive upon the court.

Defendant's second assignment of error reads as follows: "For giving instructions for the plaintiff over objections of the defendant, and for the refusal to give defendant's instructions, and for amendments to the defendant's instructions."

The court granted 21 instructions, 6 for plaintiff and 15 for defendant. It amended one of defendant's instructions and refused three. The applicable principles of law, as stated in the instructions, were substantially correct. Defendant concentrates its attack upon the giving of an instruction on sudden emergency. The trial court, in a very helpful opinion, analyzed the evidence and dealt with each of defendant's contentions separately. It stated its reasons for giving an instruction on emergency thus:

"Of course, the party invoking the doctrine of sudden emergency must be without fault, and in this case, the jury, the trying tribunal and the arbiter of the facts, were distinctly told *that* in the sudden emergency instruction. The evidence was to the effect that this decedent was proceeding on his side of the highway at a lawful rate of speed when suddenly this bus, as above described, wheeled across his line of travel and within a few feet in front of him; the deceased was there confronted with a tremendous situation,—it was an active situation, that is, it was self-acting. The bus was moving and his car (truck) was moving, and they were moving at such a rate of speed that they would of necessity, traveling as they were, come together, unless something effective was done. The mere space of 30 odd feet in front of a vehicle going 35 miles per hour is covered in about one-half of a second, two ticks of a watch or the

wink of an eye, and it is all over, allowing for proper coordination and action on the part of those who are dealing with eyesight and muscular movements to so handle themselves as to do the best and wisest thing."

Decedent "was faced with a necessity of action; he had one of three things to do apparently: he could go forward and undertake to stop, or he could turn to the left and undertake to by-pass this bus, or he could turn to the right as he did. We know the results of his last action, which is involved here. Had he gone forward, he might have wrecked the whole thing, bus and all, nobody knows, or if he had undertaken to have gotten past the 27 ft. 10 inches of bus extending across the road, perhaps he might have wrecked the bus there or come into collision with some passing car behind. It only seems sufficient to say that if he, without fault, was proceeding on the highway and was faced with this emergency right in front of him and did the best that he could, surely he is not, under the law, deprived of his rights for having exercised the best of his judgment."

This analysis of the evidence on the point is convincing as to the fact that the plaintiff was entitled to an instruction on the question of emergency. The record discloses that the defendant was given every opportunity to prepare and present its case. The rulings of the court were fair and substantially correct. The defendant has had one fair and impartial trial. It is not entitled to have another jury pass upon its contentions.

The judgment is affirmed.

*Affirmed.*