# Richmond

ALTON SINK AND GRADY FERGUSON V. C. F. MASTERSON.

November 27, 1950.

Record No. 3708.

Present, Hudgins, C. J., and Gregory, Eggleston, Buchanan and Miller, JJ.

The opinion states the case.

*Woods, Rogers, Muse & Walker, Sidney F. Parham, Jr.* and *John H. Thornton, Jr.,* for the plaintiffs in error.

*Walter H. Scott,* for the defendant in error.

Eggleston, J., delivered the opinion of the court.

As the result of a collision between an automobile owned and operated by C. F. Masterson and a truck owned jointly by Alton Sink and Grady Ferguson, and driven by the latter, Masterson was painfully injured and his car badly damaged. In an action for damages Masterson has recovered a verdict and judgment against Sink and Ferguson which are before us on a writ of error allowed the defendants.

The collision occurred at about two p. m. on December 14, 1948, on U. S. Highway 220, one mile south of the city of Roanoke. At the point of the collision Route 220 runs approximately north and south, is straight, paved to a width of thirty-six feet, and divided into three traffic lanes indicated by the usual white lines. The hard surface is flanked on both sides by fairly wide gravel shoulders. At

the time of the accident the weather was clear and the road dry. The lawful speed limit there was fifty miles per hour.

Masterson, aged seventy-seven, was driving his 1934 Chevrolet sedan in a northerly direction along Route 220 in the east or northbound lane. It was his intention to make a left turn from the main highway into the driveway leading from the west side of the road to his son's home. While making this turn the Masterson car was struck on the right side by the Sink-Ferguson truck which was proceeding southwardly along Route 220.

As the Masterson car approached the point of the intended turn a northbound gravel truck overtook and passed it. That vehicle, however, passed the intersection safely and was in no way involved in the collision.

The only eyewitnesses to the collision were Masterson and Ferguson, the drivers of the respective vehicles, and as is usual in cases of this character their recitals of the crucial facts are in hopeless conflict.

Masterson's version is that when he reached a point in the road nearly opposite the driveway he pulled into the middle lane, gave a hand signal for a left turn, and made the turn at a fairly sharp angle. He says that he made the turn without stopping and at a speed of from ten to twenty miles per hour. When he started his turn he observed the approaching truck a considerable distance to the north. He fixed its then position as opposite the residence of William Jennings, which is some 400 feet north of the Masterson driveway.

At that distance, Masterson says, he was unable to tell the speed of the truck but thought that he had sufficient time to cross in front of it. However, the speed of the oncoming vehicle was much greater than he had estimated it to be and before he could complete his turn and clear the main road the collision occurred. At the moment of the impact, he says, both of the front wheels of his car were on the shoulder.

There was evidence that shortly before the collision the

brakes on the truck had been applied, relaxed and applied again, resulting in skid marks for a distance of ninety-one feet and again for a distance of twelve feet.

A State trooper who appeared on the scene shortly after the collision, and was called as a witness for the defendants, found the front bumper of the truck interlocked in the right side of the car. Both front wheels of the car were on the shoulder and its rear wheels were on the pavement. The right wheels of the truck were on the shoulder and the left wheels on the hard surface. According to this witness, the marks on the roadway indicated that the truck had skidded for a distance of "eighteen steps," and that the Masterson car had been pushed sideways a distance of "four steps" by the force of the impact.

William Jennings, a witness for the plaintiff, testified that he was working in a field on the west side of the highway and north of the Masterson driveway, that he heard the "screech" of the brakes on the truck and saw that vehicle "weaving" as it passed him, indicating that it was out of control.

Ferguson's account of the accident was that he was proceeding southwardly in his proper lane at a speed of about forty-five miles per hour; that he saw the Masterson car as it pulled to its right and gave way to the overtaking northbound gravel truck; that he also saw the Masterson car turn to its left into the middle lane, but did not observe any hand signal indicating that Masterson intended to make a left turn into the driveway; that suddenly when the two vehicles were only about fifty feet apart the car "cut across in front of" the truck; and that in an unsuccessful effort to avoid the collision he (Ferguson) put on his brakes and cut his vehicle to the right.

The defendants, Sink and Ferguson, challenge the sufficiency of the evidence to sustain the verdict and judgment on two grounds. They say, (1) it fails to show that Ferguson was guilty of any negligence which proximately caused the collision; and (2) it shows that the plaintiff, Masterson,

was guilty of contributory negligence as a matter of law which bars his recovery.

The defendants argue that had the truck been opposite the Jennings house, or 400 feet away, when Masterson says he began his turn, a collision between the vehicles would have been a physical impossibility, because, they say, at the speed of ten to twenty miles per hour, which Masterson says he was going, his car would necessarily have cleared the road before the truck reached the point of impact. Consequently, they say, this testimony of Masterson must be discarded as incredible.

Tested by a like rule of exactitude, the story of Ferguson is incredible. His statement that the Masterson car cut in front of the truck when the vehicles were only fifty feet apart, and that thereafter he applied his brakes in the effort to avoid the collision, is physically incompatible with the skid marks which his witness, the traffic officer, said the truck made for a distance of eighteen steps, or approximately fifty-four feet, along the road.

These statements of the respective parties as to such distances and speed are mere estimates, made in fleeting moments and related months after the occurrence. The fact that such estimates are not precisely correct does not render the testimony of either party incredible as a matter of law. It is merely a circumstance to be considered by the jury in weighing such testimony. *Saunders* v. *Hall*, 176 Va. 526, 538, 539, 11 S. E. (2d) 592, 596; *Crew* v. *Nelson*, 188 Va. 108, 114, 115, 49 S. E. (2d) 326, 329.

We think there is ample evidence to warrant the finding that Ferguson was negligent, in that he failed to keep a proper lookout and failed to have his vehicle under proper control.

The jury has accepted Masterson's version as to how the collision occurred. According to him, he gave a proper signal indicating his intention to make a turn and began his turn when the truck was a considerable distance away. The physical facts show that the turn had nearly been

completed and that the Masterson car had almost cleared the main road when the impact occurred.

Ferguson admits that he did not see Masterson's signal. He also says that the vehicles were only a short distance apart when he saw the car turning in front of him. The jury had the right to find that had Ferguson been keeping a proper lookout he would have seen the signal and would have observed sooner the car in the act of making the turn.

The skid marks on the pavement, which the traffic officer testified extended for a distance of approximately fifty-four feet, conclusively show that Ferguson was mistaken in his statement that he did not see the automobile until the vehicles were only fifty feet apart. It indicates that Ferguson saw the car when it was farther away, and tends to show that he was unable to avoid the collision because he did not have the truck under proper control.

Again, the fact that the Masterson car was knocked or pushed sideways for a distance of four steps, or approximately twelve feet, by the force of the impact lends additional weight to the inference that the truck was going at a considerable speed and was not under proper control.

We are also of opinion that it was for the jury to say whether Masterson was guilty of contributory negligence in trying to turn in front of the approaching truck.

The gist of Masterson's case is that when he began his turn the truck was a considerable distance down the road. Although he expressed the opinion that because of the short time in which the truck traversed the distance it must have been going at from seventy to eighty miles per hour, he repeatedly stated that at the time he began his turn he did not see or realize that the other vehicle was proceeding at such a rapid rate of speed. To use his own words, "I didn't know he was trying to put wings under that truck. If I had, I'd have waited until he flew over."

Code, sec. 46-233, provides that before a motorist turns from a "direct line" of travel he "shall first see that such movement can be made in safety." In *Smith* v. *Clark*, 187

Va. 181, 189, 190, 46 S. E. (2d) 21, 25, we held that this provision does not make such motorist an insurer of the safety of his turn, but that he must "use reasonable and ordinary care under the circumstances to see that such movement can be made safely." See also, *Schools* v. *Walker*, 187 Va. 619, 624, 625, 47 S. E. (2d) 418, 421.

The statute also requires that "whenever the operation of any other vehicle may be affected by such movement" the operator "shall give a signal," plainly visible to the driver of the other vehicle, of his intention to make such turn.

In the case before us it was for the jury to say whether Masterson complied with the mandate of the statute in both respects—that is, whether under all of the circumstances, before making the turn he exercised ordinary care to see that such movement could be made in safety and gave the required signal.

In similar cases we have held that whether, under the particular circumstances, the driver of a car acted as a reasonably prudent person in trying to make a turn across the path of another vehicle is for the jury. *Stratton* v. *Bergman*, 169 Va. 249, 192 S. E. 813; *Temple* v. *Ellington*, 177 Va. 134, 12 S. E. (2d) 826; *Virginia Stage Lines* v. *Duff*, 185 Va. 592, 39 S. E. (2d) 634; *Smith* v. *Clark, supra*.

Error is assigned to the granting of Instruction No. 4 at the request of the plaintiff. This instruction reads thus:

"The court instructs the jury that upon a highway which is divided into three lanes a vehicle may be driven in a middle lane in preparation for a turn, and that a person who has entered into the center lane for the purpose of making a left turn is required to make a signal for a left turn, and if you believe from a preponderance of the evidence that the plaintiff so entered the middle lane and gave a proper signal for a left turn at the proper distance, and no traffic was approaching, in such a manner as to indicate that the turn could not be made in safety if the approaching traffic observed traffic laws, then the plaintiff had a right to assume that the defendant would observe such traffic laws

of this state, and to make his left turn into his driveway on his left-hand side of the road into which he had indicated he would turn, unless they believe that when he began his turn he saw, or in the exercise of ordinary care should have seen, that the truck was not being operated in a lawful manner."

■ The purpose of the instruction was to define the rights and obligations of a motorist who was about to make a left turn from a line of traffic. Aside from the fact that it is long, cumbersome and argumentative, it is fatally defective in that it does not correctly define the duties prescribed by the statute (Code, sec. 46-233) which we have just considered.

After telling the jury that where a highway is divided into three lanes "a vehicle may be driven in a middle lane in preparation for a turn," it undertakes to state what the motorist must then do. It says that one who has entered "the center lane for the purpose of making a left turn is required to make a signal for a left turn." It omits the vital requirement of the statute that before undertaking to make the turn the operator "shall first" use ordinary care under the circumstances to "see that such movement can be made in safety."

It next tells the jury that if they believe from a preponderance of the evidence, among other things, that "no traffic was approaching, in such a manner as to indicate that the turn could not be made in safety if the approaching traffic observed traffic laws, then the plaintiff had a right to assume that the defendant would observe such traffic laws of this state, and to make his left turn."

In effect, this portion of the instruction substitutes for the plaintiff's statutory duty to exercise ordinary care to see whether the turn could be made in safety, the "right to assume" that the defendant would not be negligent.

■ While the plaintiff had the right to assume that the driver of the truck would observe the traffic laws of the State, this did not relieve him (the plaintiff) of the

duty to comply with the mandate of the statute. *Temple v. Moses*, 175 Va. 320, 331, 8 S. E. (2d) 262, 266.

Again, the wording that if "no traffic was approaching, in such a manner as to indicate that the turn could not be made in safety" the plaintiff had a right to make his turn, carries the implication that he was to be the unqualified judge as to whether the turn could be made safely. The correct standard is not the plaintiff's appraisal of the situation, but that of a reasonably prudent person under the same or similar circumstances. In other words, as phrased, the instruction permitted the jury to accept the plaintiff's judgment, that the oncoming truck was a sufficient distance away for him to undertake the turn in front of it, whereas the correct test is whether a reasonably prudent person under the same or similar circumstances would have deemed it so.

The closing part of the instruction, which told the jury that under the hypothetical clauses above the plaintiff had the right to make the turn "unless they believe that when he began his turn he saw, or in the exercise of ordinary care should have seen, that the truck was not being operated in a lawful manner," does not cure the errors which we have discussed. Indeed, it is not a correct statement of the applicable principles. This language conditioned the plaintiff's right to make the turn upon whether he saw, or by the exercise of ordinary care should have seen, that the truck was being operated in an *unlawful* manner. The truck may have been operated in a *lawful* manner and yet the jury might have concluded that it was so close and coming at such speed that the plaintiff, in the exercise of ordinary care, should have observed this situation and should not have attempted to cross in front of it.

Because of the error in granting this instruction the judgment is reversed, the verdict set aside, and the case remanded for a new trial.

*Reversed and remanded.*