# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

### Ruby H. Vaughan v. Sandy Eatoon and John Gayle.

November 28, 1955.

Record No. 4397.

Present, Hudgins, C. J., and Eggleston, Spratley, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Baird, White & Lanning; Lane, Rogers & Paul* and *Guilford D. Ware,* for the plaintiff in error.

*Shapero & Shapero,* for the defendants in error.

HUDGINS, C. J., delivered the opinion of the court.

Ruby H. Vaughan, her daughter, Eva Kidwell, and her nine year old grandson, Daniel Kidwell, instituted separate actions against the defendants to recover compensation for personal injuries sustained by each in a collision between an automobile driven by Ruby H. Vaughan and an ice truck operated by Sandy Eatoon and owned by John Gayle. The three actions against the operator and owner of the truck were tried together. The jury returned a verdict for each of the three plaintiffs. The court entered judgment on the verdicts for Eva and Daniel Kidwell, but set aside the verdict of $2,500.00 returned by the jury for Ruby H. Vaughan and entered judgment thereon for defendants. The case is now before us on a writ of error allowed Ruby H. Vaughan. For convenience we shall refer to the parties as they appeared in the court below.

The only ruling of the trial court challenged is its action in setting aside the verdict for plaintiff on the ground that she was guilty of contributory negligence as a matter of law. This contention requires a detailed statement of the evidence.

On Sunday, August 9, 1953, plaintiff with her daughter and grandson as passengers in an automobile operated by her left Ocean View *en route* to Richmond. At approximately 1:00 p.m. she was driving in a general southerly direction on Port View Avenue in Norfolk. Upon approaching its right angle intersection with First View Street she "slowed practically to a stop" and looked in both easterly and westerly directions on First View Street. She saw no traffic approaching from her left, but did see a 1949 Dodge ice truck, driven by Sandy Eatoon and owned by John Gayle, 5 or 6 car lengths away approaching the intersection from the west and traveling rather fast. Thinking she had time to cross in safety, she increased her speed and entered the intersection, which was 32 feet in width. The front of her automobile had gotten across the intersection when the operator of the truck swerved to his right and struck her right front fender and door, shoving her car upon the eastern curb of Port View Avenue, knocking her unconscious and inflicting temporary injuries upon her, her daughter and grandson.

■ Defendants contend that that part of plaintiff's testimony in which she said that when she entered the intersection she saw de-

fendants' truck 5 or 6 car lengths from the intersection and approaching at 35 miles an hour convicts her of negligence as a matter of law. They argue that this testimony as to distance and speed is binding upon her and that she cannot make her case any stronger than her own recital of the facts. This principle, enunciated in *Massie* v. *Firmstone*, 134 Va. 450, 114 S. E. 652, was analyzed and discussed at some length by Mr. Justice Eggleston in *Crew* v. *Nelson*, 188 Va. 108, 114, 49 S. E. (2d) 326. His conclusion on the subject was stated as follows:

"And, so, in a personal injury case, if the plaintiff, a person of average intelligence and in possession of his faculties, while detailing the circumstances of the accident, clearly and unequivocally testifies to facts which show as a matter of law that he has no case, he is bound thereby and cannot recover.

"Whether such has been the effect of the litigant's testimony must be determined from a fair reading of it as a whole, and not merely by reference to isolated statements which are adverse to his claim. See *Tignor* v. *Virginia Elec.*, *etc.*, *Co.*, 166 Va. 284, 290, 291, 184 S. E. 234, 236.

"Unless the testimony of the litigant shows clearly and unequivocally that he has no case, or where fair-minded men may differ as to the effect of his testimony, the litigant is not concluded thereby. In such a situation his testimony is to be considered by the jury along with all of the other evidence in the case. See *Tennes* v. *Tennes*, 320 Ill. App. 19, 50 N. E. (2d) 132, 139, and cases there cited."

▇ In determining whether plaintiff was guilty of contributory negligence as a matter of law, extracts from her testimony are not sufficient. It must be considered as a whole and viewed in the light of other testimony in the case. She did not claim to be an expert on estimating speed and distance. She frankly stated that she did not know the exact distance the truck was from the intersection at the time she entered, nor did she know the speed it was traveling. She approached the intersection at a reasonable rate of speed, brought her car almost to a stop, looked carefully in both directions, east and west, and saw defendants' truck to her right approaching rather fast. But thinking she had plenty of time to cross in safety, she entered the intersection traveling at 10 miles an hour, increased her speed and had almost cleared the intersection when struck. We have repeatedly held that statements of the parties as to such distance and

speed are mere estimates made in fleeting moments and related months after the occurrence. Such estimates are mere circumstances to be considered by the jury in weighing testimony. *Sink* v. *Masterson*, 191 Va. 618, 61 S. E. (2d) 863.

The testimony of Eva Kidwell, who was riding on the front seat to her mother's right, tends to prove that her mother acted with ordinary care for her own safety when she entered the intersection. This witness said that just before entering the intersection her mother almost stopped the automobile. She, the witness, looked to her right and saw the truck, which she estimated to be approximately 100 feet to the right, approaching the intersection. It was too far away for her to estimate the speed, but she saw nothing dangerous or alarming in its approach. Before they were across the intersection she realized that the truck, which had not slackened its speed, was going to strike the automobile. She turned around to protect her son, who was on the back seat, but before she could reach him the truck struck the right front door and fender of the automobile. The force of the impact dazed her mother and rendered her unconscious for a short period.

Millard F. Warrick, an auditor for the National Bank of Commerce, and a disinterested witness, testified that as he came out of the Ocean View Grocery store on the southeast corner of Port View Avenue and First View Street, he crossed Port View Avenue at or near the intersection to get to his car, which was parked on the southwest corner. He saw and crossed in front of plaintiff's automobile approaching at a reasonable speed. As he started to get in his car he saw the truck approaching from the west on First View Street 100 to 125 feet from the intersection. He became so alarmed at the wobbling and the speed of the truck that he waited for it to pass before attempting to open the door of his car. He watched the truck as it passed him traveling 30 to 35 miles an hour and entered the intersection, and saw it strike the plaintiff's car without slackening speed. He said there was no other traffic on the street and nothing to prevent the driver of the truck from seeing plaintiff's automobile crossing the intersection. While he was watching the truck his back was to the intersection so he did not see plaintiff's car again until the impact. On cross-examination he was asked: "Q. So your back was to it: A. Back was to it. Q. So you did not see the impact? A. I did see it. Q. Well now, let's start over again. Your back was to it; you just finished telling me, sir. A. All

right. But this man's truck was coming down here, whirling up the street so fast I couldn't get out there. The time I turned around, I saw him run right into it" without slackening speed.

W. C. Vaughan, a member of the Norfolk Police force, testified that when he arrived at the scene of the accident plaintiff's car was on the extreme east side of Port View Avenue resting at an angle, with the front end towards the curb and the rear end in the intersection. The bumper of the truck was against the right front fender and front wheel. The skid marks indicated the truck had skidded 11 feet and had driven plaintiff's car sideways 3 feet. He estimated the damage to the car to be $450. The officer also testified that the driver of the truck told him that he had been driving the truck, talking to Jesse Harris, who was in the truck with him; that he did not see plaintiff's car until it was immediately in front of his truck. He then applied his brakes, but too late to avoid the collision. He had a strong odor of alcohol on his breath and admitted taking a drink before breakfast and a bottle of beer about 10 o'clock. He was wobbly in his walking and too drunk to drive a motor vehicle. The officer arrested him for driving without a permit and refused to allow him or Jesse Harris to move the truck because both were intoxicated.

The testimony of Sandy Eatoon and Jesse Harris is quite different from that for the plaintiff and is substantially as follows:

Sandy Eatoon, with Jesse Harris as helper, was delivering ice for their employer, John Gayle, to various families. They had stopped at the home of a regular customer who lived on First View Street two houses and about 150 feet from its intersection with Port View Avenue. Sandy Eatoon got out leaving Jesse Harris in the truck and went into the house and ascertained that the family did not need ice. He came back, got into and started the truck, "put it in first gear, started off and put it in second" and approached the intersection driving at 10 miles an hour. When he reached the intersection he saw plaintiff's car approximately 100 feet from the intersection coming at a reasonable speed. He entered the intersection when plaintiff's car increased its speed and pulled in front of him. "I mashed on my brakes and pulled to my right."

If defendants' truck was started from a parked position 150 feet west of the intersection, its speed could hardly have been increased to 35 miles an hour within 50 feet, or before it reached 100 feet of the intersection, the estimated distance the testimony of plaintiff

tends to place it when she entered the intersection.

Immediately after the impact plaintiff was hazy, momentarily unconscious and excited. She did not, in her testimony, attempt to state exact rates of speed, distances and locations. Indeed, she said that she could not judge the speed of the truck in miles per hour when she first saw it. She thought it was far enough away for her to cross the intersection in safety. It does not clearly or unequivocally appear from her testimony that she was guilty of contributory negligence. It is primarily the province of a jury to weigh and evaluate the factual meaning of the testimony of all witnesses and, unless it clearly appears that they have abused or transcended the wide scope of their authority as reasonable men, their finding of fact should not be disturbed. They saw and heard plaintiff testify. What she intended and meant by the speeds, the distances and locations to which she testified were matters peculiarly within their province. *Clayton* v. *Taylor*, 193 Va. 555, 69 S. E. (2d) 424.

It is not deemed necessary to review the numerous authorities cited by plaintiff and defendants in support of their respective contentions. Each case turns upon its own peculiar facts.

Considering the entire evidence in this case, we find that the jury has a right to conclude therefrom that plaintiff was not guilty of contributory negligence; that defendant was guilty of negligence in that he drove his truck while drunk, exceeded the speed limit. permitted his truck to wobble from side to side, and failed to keep a proper lookout, and that such negligence was the sole proximate cause of the collision.

The judgment of the trial court is reversed, the verdict of the jury reinstated, and final judgment will be entered thereon for plaintiff.

*Reversed and final judgment.*