# Richmond

BENJAMIN L. BARNES, TRADING AS COMMUNITY MOTOR BUS COM-
PANY, AND WILLIAM H. PHILLIPS v. ELIZABETH CALUNEO.

March 16, 1959.

Record No. 4886.

Present, Eggleston, C. J., and Spratley, Buchanan, Miller, Whittle and Snead, JJ.

The opinion states the case.

*Edward L. Breeden, Jr.* (*Breeden, Howard & MacMillian*, on brief), for the plaintiffs in error.

*Willard J. Moody* (*Richard D. Mattox; Moody & Mattox*, on brief), for the defendant in error.

MILLER, J., delivered the opinion of the court.

Elizabeth Caluneo, hereinafter called plaintiff, recovered a verdict and judgment against Benjamin L. Barnes, trading as Community

Motor Bus Company, hereinafter called Community Bus, and William H. Phillips, for personal injuries sustained by her when an automobile driven by her husband, James C. Caluneo, in which she was riding, collided at a street intersection with a bus driven by Phillips, an employee of Community Bus.

An appeal was awarded Community Bus and Phillips, and they assert that the evidence is insufficient to prove that Phillips was guilty of any negligence that proximately caused the collision. They contend and argue that plaintiff's evidence is incredible and thus cannot support the verdict.

The defendants offered no testimony; summarized, the pertinent evidence introduced on behalf of plaintiff follows:

The accident occurred about one o'clock p.m. August 6, 1956, at the intersection of High street and Halifax avenue in the city of Portsmouth, Virginia. High street, 41 feet, 1 inch wide, extends in an easterly and westerly direction; Halifax avenue, 300 feet, 3 inches wide, extends in a northerly and southerly direction. Both streets are hard surfaced, and there are no traffic controls or stop signs at the intersection.

James C. Caluneo, who was a non-resident and unfamiliar with the area and intersection, testified that on the day of the mishap he was driving northwardly along Halifax avenue at about 10 miles an hour with plaintiff and three other persons seated in his car. When he reached its intersection with High street, he stopped his car slightly south of the center of the sidewalk, looked both ways along High street, and saw the bus to his left coming eastwardly toward the intersection. It was approaching at a "low rate" of speed "down by the white fence" at a curve in the road west of the railroad track that crosses High street, a "long block" or a "long block and a half" away. He permitted a car going westwardly on High street to pass and then proceeded into the intersection at a speed of five to six miles an hour; when the front wheels of his car reached the center or were slightly beyond the center of the street, he saw the bus coming down High street. When he saw the bus this second time, he said that the left part of the bus, or its left wheels, were a foot and a half to the left of the center of the road, and graphically described it as looking like "a big mountain coming down the street."

On direct examination when asked if he noticed any difference in the speed of the bus when he saw it the second time compared to its speed when he first noticed it, he answered, "The second time,

yes; yes, I did." Upon being asked, "Would you describe that, please, sir?", he answered by first stating where his car was when struck and then said: "From the way he was coming I judged he was really speeding, and the only thing for me to do was try to accelerate the car and try to get over." However, to the further inquiry, "Were you able to judge his speed?", he answered, "No." The speed limit in this area is 25 miles an hour, and his reply to another inquiry which directed his attention to that fact and asked if he could make an estimate as to whether the bus "was going above twenty-five" miles an hour, was, "I would give an estimate of about 45 or 50."

Plaintiff was seated on the left of the rear seat, and she testified that when their automobile stopped at High street, she looked to her left and saw the bus traveling eastwardly and it was then "by the white fence" but she could not estimate the distance that the bus or the fence was from the intersection. She said that after seeing it she started talking with her sister-in-law who was seated on her right, was unable to estimate the speed of the bus, and the only thing she remembered thereafter was the impact.

R. S. Booth, a city police officer who arrived on the scene two or three minutes after the accident, testified that there is a railroad track approximately two blocks, or about 538 feet, westwardly from the intersection, and an open field to the south of High street west of the track. He said that south of High street and east of the track there is a cleaning establishment with "a small fence around behind it," but he did not "recall" any "white fence" in the area. The officer did not attempt to estimate the distance from the intersection to the fence or the distance from the fence to the railroad track. Debris was observed by him in the middle of the intersection but there were no skid marks from either vehicle. Caluneo's car had been struck on the left rear side and damaged extensively, and the damage to the bus was on the front bumper. The vehicles had not been moved when he arrived; the automobile had come to rest on the northeast corner of the intersection headed in a southerly direction and the bus had stopped thirty feet east of the intersection.

Frank Lopinto observed debris from the car, which he said was in the intersection "more to the north" of the center of High street and "more on the east side" of Halifax avenue.

Plaintiff obtained a verdict which has been confirmed by the trial court, and she is entitled to have the evidence viewed in the light

most favorable to her. All conflicts in the evidence, if any, and all reasonable inferences deducible therefrom must be resolved in her favor. *McDowell* v. *Dye*, 193 Va. 390, 69 S. E. 2d 459. Burks *Pleading and Practice*, 4th ed., § 428, p. 837.

We are not entitled to reverse the judgment unless it is plainly wrong or without evidence to support it. § 8-491, Code 1950.

The chief reason urged upon us by Phillips and Community Bus for vacating the verdict and judgment is that plaintiff's testimony and that of her husband state facts and circumstances that preclude recovery. They assert that if the bus was as far to the west as it was stated to be by these witnesses when they saw it while their automobile was standing at the intersection, then at the speeds that the respective vehicles traveled toward and into the intersection, the collision could not have occurred. It is then argued that Caluneo's and plaintiff's observations and statements as to the location of the bus are binding upon plaintiff and the testimony upon which she relies is incredible.

We agree that if the location of the objects and of the bus when James C. Caluneo and plaintiff first observed them are taken to mean and are treated as correct and exact in identity, location and distance, then it would appear impossible or decidedly improbable for the collision to have taken place if the vehicles were traveling at or about the speeds indicated by Caluneo. Yet he did not state how long his automobile remained standing after he saw the bus or just where the bus was when he moved forward, nor its distance from him when he saw it the second time. When the testimony of Caluneo and plaintiff is weighed and considered, and the circumstances under which their observations were made are taken into consideration, it does not appear that either undertook to fix the exact speeds at which the vehicles were moving or the exact location of the physical objects that they observed or the precise location of the bus when they saw it.

It is to be remembered that Caluneo and plaintiff were strangers in the community and unfamiliar with the crossing and surrounding area. Their observations of objects were fleeting and momentary. The statements of either as to the location and distance from the intersection of objects they observed, and his estimate of the speed of the bus, were at best not exact.

"These statements of the respective parties as to such distances and speed are mere estimates, made in fleeting moments and related months

after the occurrence. The fact that such estimates are not precisely correct does not render the testimony of either party incredible as a matter of law. It is merely a circumstance to be considered by the jury in weighing such testimony." *Sink, et al.* v. *Masterson,* 191 Va. 618, 623, 61 S.E. 2d 863.

"His testimony impresses us that he merely intended to give a rough estimate of the location and distance that he thought Clayton's car was away from Roanoke avenue when he entered the intersection rather than a statement of the precise location of the car." *Clayton* v. *Taylor,* 193 Va. 555, 560, 69 S. E. 2d 424.

It is not contended that plaintiff was guilty of any negligence and defendants lose sight of the fact that she gave no testimony as to the speed of the bus. It may be that she and her husband are both mistaken about the bus being by a "white fence," and he may be mistaken as to the bus being "west of the track" when he first saw it. The police officer said that he saw a fence east of the track though he recalled no "white fence."

It would be quite natural under the circumstances that only a rough estimate of the distance the bus was from the intersection, its location with relation to stationary objects or landmarks and their identity, and its speed when first seen, would be made and remembered by either Caluneo or plaintiff, and for that reason their testimony might be somewhat incorrect in particulars. However, because their testimony may be incorrect in some of its particulars, that does not necessarily render all of it incredible.

"* * * These calculations, however, are based on elements of place, speed and distance not conclusively established by the evidence. They may well have been for the jury to consider, but they do not as a matter of law render the plaintiff's testimony incredible." *Anchor Motor Freight, Inc. of Delaware* v. *Paul, et al.,* 198 Va. 480, 486, 95 S. E. 2d 179.

Phillips did not testify and we do not have the benefit of any evidence as to just where the bus was when Caluneo moved his car from its standing position into the intersection. However, Caluneo approached from the right and would ordinarily be entitled to the right of way, which the evidence does not show to have been forfeited. Section 46-238, 1956 Cum. Supp., Code of 1950, now § 46.1-221, Replacement Volume 7, Code 1950. Whatever may have been the exact location of the bus when first seen, the evidence is sufficient to prove that it approached Caluneo's vehicle from the left traveling

along the center of High street in excess of the speed limit just before and at the time of the collision.

Assuming, but not deciding, that plaintiff's husband was negligent and that his negligence was a proximate cause of the collision, still it is quite clear that the evidence relied upon to sustain the recovery is not incredible. It supports the finding that the bus driver was guilty of negligence that proximately caused the mishap.

*Affirmed.*