# Richmond

WILLIAM GENE BEASLEY, AN INFANT, ETC. V. SAMUEL BARNES, ET AL.

March 7, 1960.

Record No. 5054.

Present, All the Justices.

The opinion states the case

*Robert E. Gibson* and *Major M. Hillard, Jr.*, for the plaintiff in error.

*E. L. Ryan, Jr.* and *Eugene Forrest Gordman (I. W. Jacobs; White, Ryan & Reynolds*, on brief), for the defendants in error.

SNEAD, J., delivered the opinion of the court.

The sole question involved in this appeal is whether plaintiff, William Gene Beasley, an infant who was 19 years of age, was guilty of contributory negligence as a matter of law when the motorcycle he owned and operated collided with a truck owned by defendant Bottoms Fiske Truck Lines, Incorporated, and operated by defendant Samuel Barnes, its employee, in South Norfolk on January 22, 1957.

A trial was had on May 6 and 7, 1958, and the jury awarded plaintiff a verdict in the sum of $27,500 for damages resulting from severe personal injuries he sustained. On motion of defendants, the trial court by its order of February 26, 1959, set the verdict aside as being contrary to the law and the evidence and rendered judgment for defendants. We granted plaintiff a writ of error.

The accident happened about 4:15 p. m. on Campostella road at the entrance to the Bottoms Fiske property where the company has a sizeable white office and warehouse building about 50 feet back from dual swinging entrance gates which are 15 or 16 feet wide. Campostella road is of black top construction, about 18 to 20 feet wide and consists of two lanes. It runs north and south. Bottoms Fiske's dirt driveway is on the east side of Campostella road and relatively opposite it on the west side is Laurel street which comes to a dead end there. Laurel street is also of dirt construction and is not quite as wide as the entrance gates to Bottoms Fiske. North of this point Campostella road is straight for approximately 400 yards and south of it the road is straight for about 1.5 blocks. In the vicinity of the accident the north and southbound lanes of Campostella road are divided by a single broken white line and the highway is practically

level. The weather was clear and driving lights were not needed. According to plaintiff the road was neither wet nor dry. He said it had rained previously. Other witnesses described the road as dry.

Plaintiff was driving his motorcycle, which was in good condition, south on Campostella road. Riding tandem on the seat with him was Miss Becky White, age 17, whom he was taking to her place of employment. Plaintiff was familiar with the road and the surroundings as he had driven on it many times before. There was no oncoming traffic at the time and the speed limit for the section of the road involved was 25 miles per hour. Considerable traffic was flowing south on Campostella road. Plaintiff passed several vehicles, including a tractor-trailer truck which was immediately behind the Bottoms Fiske 1953 Ford truck, and collided with the Bottoms Fiske truck as it was making a left turn into the entranceway of Bottoms Fiske's warehouse. The operator of the tractor-trailer truck, estimated the speed of the Bottoms Fiske truck when making the turn was 5 to 10 miles per hour. The police officers, who arrived at the scene about 2 or 3 minutes after the accident, said that the impact occurred on the hard-surfaced portion of the road in the northbound lane at a point approximately 3 feet from the east side thereof. The motorcycle left skid marks about 87 feet long. The impact caused both Beasley and Miss White to be thrown from the motorcycle. Miss White was not injured. There was practically no damage done to the truck, and the motorcycle was not heavily damaged.

Beasley testified that he was traveling about 20 miles per hour; that he blew his horn before he attempted to pass the Bottoms Fiske truck; that Barnes gave no signal of his intention to make the turn; that he was approximately 125 feet from the truck or "something like that", when he first noticed it was going to make the turn; that he applied the brakes to both wheels and "tried to lay the motorcycle down", which means turning it towards the ditch. He further testified that the truck "made a sharp turn"; that it "blurted right out" of the line of traffic and that he struck it in the side.

Miss White testified that Beasley was traveling about 20 miles per hour; that he sounded his horn before attempting to pass the Bottoms Fiske truck; and that it cut across in front of them "sort of cater-cornered without a signal."

Barnes said: "I was coming down on Campostella Road on 170 and about two hundred and fifty yards down the highway I put the indicator on for a left turn and went down to the gate, and looked through my mirror and seen a line of cars back there and there was a motor-

cycle. I turned in and no sooner than I did I heard the hit. I couldn't stop the truck as soon as he hit it because I was so excited." Later, on cross-examination, he testified that he "was practically on the gate" the last time he looked in the mirror and he did not see the motorcycle; that he had reduced his speed to 5 or 10 miles per hour, and that he did not know whether the motorcycle horn blew because his truck made so much noise. He stated the motorcycle collided with the truck "right behind the back wheel, near the tail gate."

Other witnesses testified for the litigants. The conflict in the evidence as to whether plaintiff was exceeding the speed limit; as to the position of the truck at the time of the collision; as to what part of the truck was struck by the motorcycle; as to whether the blinker signal lights were burning on the truck before and at the time of making the turn, and other questions of fact were issues the jury resolved in favor of plaintiff.

In support of their contention that plaintiff was guilty of contributory negligence as a matter of law, defendants assert that plaintiff's own testimony convicts him of such negligence. It is argued that plaintiff testified he was traveling 20 miles per hour; that when he first saw the truck begin its turn across the highway to the left, he was approximately 125 feet away, and that the uncontradicted evidence was that after he applied his brakes the motorcycle left skid marks of approximately 87 feet. Defendants say that the physical facts warrant the inference of excessive speed and that plaintiffs estimate of speed is incredible and should be rejected. They point to § 46-212.2[1], Code 1950, as amended, which relates to stopping distances of motor vehicles under certain conditions, to show that plaintiff was operating his motorcycle at an excessive rate of speed. Defendants also contend that the place where the accident occurred constituted a legal intersection and that when plaintiff attempted to pass the Bottoms Fiske truck there he did so in violation of § 46-209(4)[2], Code 1950, which was negligence. They maintain the

---

[1] Section 46-212.2 is now codified as § 46.1-195 in 1958 Replacement Vol. 7, Code 1950.

[2] Section 46-209. "A person shall be guilty of reckless driving who shall:

\*        \*        \*        \*        \*        \*        \*

"(4) Overtake or pass any other vehicle proceeding in the same direction at any steam or electric railway grade crossing or at any intersection of highways or while pedestrians are passing or about to pass in front of either of such vehicles, unless permitted so to do by a traffic light or police officer;"

This section was amended by Acts of Assembly 1958 and is now codified as § 46.1-190(e) in 1958 Replacement Vol. 7, Code 1950.

accident followed this negligence as a matter of course.

In *Sink* v. *Masterson*, 191 Va. 618, 623, 61 S. E. 2d 863, we said:

"These statements of the respective parties as to such distances and speed are mere estimates, made in fleeting moments and related months after the occurrence. The fact that such estimates are not precisely correct does not render the testimony of either party incredible as a matter of law. It is merely a circumstance to be considered by the jury in weighing such testimony." *Clayton* v. *Taylor*, 193 Va. 555, 560, 69 S. E. 2d 424; *Barnes* v. *Caluneo*, 200 Va. 631, 634, 635, 107 S. E. 2d 484.

After plaintiff testified that he was approximately 125 feet away when he first saw the truck begin its turn, he qualified his statement by saying: "something like that". He also said: "When I first saw him he was running in the line of traffic and blurted right out." When his testimony is considered as a whole, it does not appear to us that he intended to fix the exact distance he was from the truck when it began its turn. The distance given was intended as a rough estimate made in fleeting moments and related 15 months after the accident in which he received almost fatal injuries. The weight to be given such testimony was for the jury to decide.

Section 46-212.2, *supra*, sets forth tables of speed and stopping distances of motor vehicles. It gives the average stopping distances for automobiles and trucks traveling at certain speeds. It is provided therein "that said tables are the result of experiments made with motor vehicles, unloaded except for the driver, equipped with four-wheel brakes, in good condition, on dry, hard, approximately level stretches of highway free from loose material." Defendants argue that since a motorcycle is a motor vehicle (§§ 46-1(12) and 46-1(13) ) the tables apply in the case at bar. Clearly the tables were never intended to apply to two-wheel motorcycles.

The record is silent as to what is the average stopping distance of a two-wheel motorcycle, with brakes on each wheel, traveling 20 miles per hour or any other speed, under the road conditions that existed at the scene of the accident. We cannot say that because the motorcycle skidded about 87 feet plaintiff's statement as to his speed was incredible and that his speed was excessive as a matter of law. It was a question for the jury to determine, and they were told in instruction D-9 that an inference of excessive speed on the part of plaintiff may be drawn from the length of skid marks, the force or circumstances of the impact and the damages and injuries involved, even though plaintiff testified he was driving at a lawful speed.

■ Defendants tendered instruction D-4, which was refused. It reads:

"The court instructs the jury that the law of Virginia prohibits any person from passing, or attempting to pass, another. vehicle at any intersection of streets or highways."

Defendants objected and excepted to the court's action in refusing the instruction, but they have assigned no cross-error and it will not be considered by us. Rule 5:1, § 4; *C.I.T. Credit Corp.* v. *Kaplan*, 198 Va. 67, 70, 92 S. E. 2d 359. Since neither plaintiff nor defendants have challenged any of the instructions given or refused by assignments of error, those given thereby became the law of the case. The intersection theory of the case as set forth in instruction D-4 was rejected by the court below and we do not reach its applicability here.

■ The question of contributory negligence was properly submitted to the jury under instructions of the court. The jury has found plaintiff free from such negligence. Their verdict should not have been set aside if the evidence and inferences to be fairly drawn therefrom sustain their conclusions. *Comess* v. *Norfolk General Hospital*, 189 Va. 229, 233, 52 S. E. 2d 125. The evidence was sufficient to sustain the conclusions of the jury and we cannot say that plaintiff was guilty of contributory negligence as a matter of law. That being the case, we hold that the trial court erred in setting the verdict aside and entering final judgment for defendants.

The judgment appealed from is reversed, the verdict of $27,500 returned by the jury is reinstated and judgment is now entered thereon for the plaintiff against the defendants.

*Reversed and final judgment.*